# WHEELING.

REILLY *v.* OGLEBAY.

Submitted June 5, 1884—Decided. Nov. 15, 1884.

1. What purported to be a notice.calling a meeting of the stockholders of a corporation held to be insufficient; and all the proceedings had at the meeting thus called declared invalid.

2. No authority existing in a number of persons, such as the stockholders of a corporation, can be rightfully exercised, in the absence of any member of such body, unless all have had reasonable notice and an opportunity to be present.

3. A party holding a fiduciary relation to trust-property cannot become the purchaser of such property, either directly or indirectly; and if he does the sale is voidable and may be set aside at the mere pleasure of the beneficiaries, although the price may have been adequate and the purchaser gained no advantage.

4. Under the circumstances presented by this cause, this rule is held to apply to a purchase of corporate property by or for the benefit of stockholders of a corporation, of which there was no board of directors and the sale was ordered by the stockholders in general meeting.

SNYDER, JUDGE, furnishes the following statement of the case:

The Northwestern Virginia Agricultural Society became a corporation of this State by act of the legislature in 1866, and in 1871, it was and still is the owner of about twenty-five acres of land, known as the "Fair-Grounds," on Wheeling Island in the city of Wheeling, Ohio county. The second section of the charter declares that, "The only purpose and object of said corporation shall be to advance and improve the condition of agriculture, horticulture, floriculture, stock and domestic animals, and the manufacturing, mechanical and mining arts, with such additional and other objects as may be advantageously connected therewith."—Acts 1866, ch. 94.

The said land was for several years used by the corporation as a place for holding annual fairs and carrying on the business provided for in the charter, but for a number of

years next preceding the year 1880, and since then, no fairs have been held there and the whole purpose and object of the corporation seems to have been abandoned and the land has been occasionally rented for holding pic-nics, and exhibitions by traveling shows, &c., whereby certain profits have been derived from which small dividends have been declared and paid to the stockholders. The purpose of the corporation having thus been virtually abandoned in the early part of 1880, the stockholders concluded to sell and dispose of said land, being the only property owned by it, and dissolve the corporation. To this action there seemed to be no objection by any of the stockholders. The capital stock at this time consisted of 173 shares of the par value of $100 each, but the market price was greatly in excess of the par value. Of the stock more than two-thirds of the shares were held by Jacob Hornbrook, S. J. Boyd and Oglebay Bros., of whom Earl W. Oglebay was one, and the other shares were held by a number of persons, none holding more than three shares each and the large majority but one share each.

Accordingly, to effect what seemed to be the wish of all the stockholders, a meeting of the stockholders, (there being no board of directors,) was held March 6, 1880, and a committee, consisting of said S. J. Boyd, Earl W. Oglebay and Michael Reilly, was appointed to sell and dispose of said land "for the best interest of the stockholders, for not less, as a whole, than $25,000 dollars, and on such terms as to payment as said committee may deem best. Pursuant to said order the committee made sale of the land at public auction, and W. V. Hoge, on behalf of Jacob Hornbrook, S. J. Boyd and Oglebay Bros., became the purchaser at the price of $25,400. After the sale, and after it had become known that said Boyd and Oglebay, two of the committee of sale, were interested in the purchase, some of the stocholders objected to the sale as illegal, and therefore another meeting was held and said sale set aside as voidable.

Subsequently, on June 21, 1881, Earl W. Oglebay caused to be published in the Wheeling *Intelligencer* the folllowing notice:

"STOCKHOLDERS' MEETING.

"A meeting of the stockholders of the Northwestern Vir-

ginia Agricultural Society will be held at the office of the Fire and Marine Insurance Company, on Saturday, July 9, 1881, at 2 o'clock, P. M.

"E. W. OGLEBAY, *Secretary.*"

Pursuant to this notice a meeting was held July 9, 1881, at which one hundred and twenty-eight shares of stock were represented and of these said Jacob Hornbrook, S. J. Boyd and Earl W. Oglebay owned or controlled 125 shares, being all that was present except seven shares, and the other forty-five shares were not represented at all. At this meeting the following resolution was adopted:

" *Resolved,* That R. G. Barr be appointed to sell and dispose of, at public auction, on August 20, 1881, at the front door of the Ohio county court house, to the highest and best bidder, all the real estate and appurtenances owned by the Northwestern Virginia Agricultural Society, and located on Wheeling Island. Terms of sale: One-third cash, balance in six and twelve months, in equal amounts, with interest at six per cen.t If purchaser so elects can pay part or all cash. Title to be retained until purchase money is fully paid."

An amendment was offered to this resolution providing for the sale and division of said land into building lots and streets, and then first offering the lots at private sale and afterwards, if found necessary, at public sale. This amendment was rejected and the resolution adopted by a stock vote of one hundred and twenty-one to seven shares, the former being the shares of stock owned and controlled by the said Jacob Hornbrook, S. J. Boyd and Earl W. Oglebay. Thereupon, Alonzo Loring and four others, being the owners of the said seven shares of stock thus voted in the minority, entered on the minutes of the meeting their protest against the action of the majority in ordering the sale of said land as a whole instead of dividing the same and selling it in lots.

In pursuance of said resolution R. G. Barr, on July 12, 1881, advertised said land to be sold on the 20th day of August, 1881, and thereupon the said Alonzo Loring, Michael Reilly and eight others, stockholders and owners of founteen shares of stock, presented their bill to the judge of the municipal court of Wheeling, against the said R. G. Barr and Earl W. Oglebay and all the other stockholders of said cor-

poration, praying "that the said Barr, his agents and servants, and the defendants, and each of them, may be enjoined from selling said property until the further order of this court, and that at the final hearing of this cause the said injunction may be made perpetual." On August 19, 1881, said judge granted the injunction "as prayed for" in the bill, and process was issued thereon.

The plaintiffs, after stating in their bill the foregoing facts, aver that the notice, announcing the meeting of the stockholders for July 9, 1881, was unauthorized, because the said Oglebay as secretary had no authority to call the same and because it failed to allege the authority, if any, by which the meeting was called; and that all action taken at said meeting of July 9, 1881, is null and void.

They also aver, that the said Oglebay, Boyd and Hornbrook, at the said meeting voted down the amendment providing for a division of said land with the intention of purchasing the same as a whole tor a smaller sum than it was worth and to shut out competition against themselves at the sale, and thereby they endeavored to defraud the plaintiffs and all the other stockholders than themselves out of their property. The plaintiffs insist that said property should, in justice and good faith, be divided and sold in lots, so as to increase the number of bidders and get what the same is really worth.

The defendants, Earl W. Oglebay, S. J. Boyd and Jacob Hornbrook, demurred to and answered the bill. By their answer they admit the facts hereinbefore stated, but deny that the proceedings had at the meeting of July 9, 1881, are void. They say, while said Oglebay was not authorized by the board of directors to call said meeting, he was authorized to do so by respondents, who were the owners of more than one half the stock of the corporation; and they deny that said notice ought to have alleged the authority by which it was given. They deny that they voted down the proposition to divide and sell the said land in lots with the intention of acquiring the same at less than its value, or that they intended by the resolution adopted to shut out competition, or that by the whole facts stated they alone or with any other person or persons, intended to defraud the other stockholders

or to obtain the said property at less than it was worth. They "aver that the only difference between complainants and these respondents, is simply a matter of opinion, and in view of the fact that respondents own a majority of the stock of said corporation, they have a right to control the same as long as such control is honestly exercised, and having exercised their judgment honestly and fairly, however in fact the same may be mistaken, they in law are entitled to the control thereof."

A large volume of depositions was taken for the purpose of showing on the part of the plaintiffs, that the more advantageous mode of selling said land would be by dividing and selling it in building lots and on the part of said Oglebay, Boyd and Hornbrook, that the only practicable mode is to sell it as a whole.

The court overruled the demurrer and on August 28, 1883, entered a decree that the injunction awarded the plaintiffs be made perpetual. From this decree the said Oglebay, Boyd and Hornbrook obtained this appeal.

*Daniel Lamb* and *R. G. Barr*, for appellants.

*Caldwell & Caldwell*, for appellees.

SNYDER, JUDGE:

The record does not show the grounds on which the municipal court founded its decrees. The counsel for the appellants, however, state that it decided that no proper notice for the stockholders' meeting of July 9, 1881, had been given, and, therefore, what was done at said meeting was not binding and on that account perpetuated the injuntion. The first question then to be decided is the sufficiency of this notice.

In the absence of any by-law on the subject, the mode of calling a meeting of the stockholders of a corporation is prescribed by statutes as follows: "A general meeting of the stockholders may be called at any time by the board of directors, or by any number of stockholders, holding together at least one-tenth of the capital." Code, ch. 53, § 41. In this instance it is admitted that the meeting was not

called by the board of directors and the law does not author-
ize the secretary as such to call it. It is, however, shown
that Oglebay had authority from stockholders holding more
than one-tenth of the capital and that he called the meeting
by virtue of that authority. But the statute declares that
the meeting shall be called *by the stockholders* and not by the
secretary *by authority* from the stockholders. It is admitted
that there was no board of directors for this corporation.
This was necessarily known to the stockholders. There
being no board of directors there could be no secretary of such
board. The fact, then, that Earl W. Oglebay signed the
notice as secretary could not imply that he did so as secre-
tary of the corporation. He did not sign it as a stockholder
or state that it was given by any authority of any stock-
holder. The notice, therefore, in my judgment, was not such
as the statute plainly requires and it simply amounted to no
notice. Any other person, not a stockholder, might have
given such a notice and it would have been just as obligatory
on the stockholders as this notice which showed on its face
no pretense of authority. No stockholder would be under
any legal duty to regard the one more than the other. So
far as appears Oglebay may have been secretary of the insur-
ance company at whose office the meeting was called. He
was certainly not the legal secretary of the corporation in
question, because there could in law be no such secretary in
the absence of a board of directors. I hold, therefore, that
said alleged notice was insufficient. And such being the
fact all the proceedings had at the said meeting of July 9,
1881, are invalid. It is the plain dictate of reason that no
function existing in a number of persons can be rightfully
exercised, in the absence of any of the members composing
such body, unless they have had reasonable notice and an
opportunity to be present. Field on Corp. § 227; *People* v.
*Batchelor*, 22 N. Y. 128.

The court did not, therefore, err in holding. that said
notice was insufficient, and that the sale about to be made by
the said Barr should be enjoined. Nor did it err in over-
ruling the demurrer to the plaintiff's bill.

It is further claimed by the appellants, that conceding the
correctness of the conclusion thus announced, the decree of

the court is still erroneous, because by that decree the court perpetually enjoined the defendants to the bill from selling the property of the corporation.

The plaintiffs in the cause hold, in all, fourteen shares of the stock of the corporation, and the defendants hold the balance, 159 shares. From this, it is argued that the plaintiffs, being the holders of less than one-tenth of the capital, could not call a meeting of the corporation for any purpose, and all the other stockholders being perpetually enjoined from selling the property, no meeting could be called by them for that purpose; and, consequently, this corporation which has abandoned the object of its creation, is forever deprived of the power to sell its property and wind up its affairs.

Technically, this conclusion may be legitimate upon a literal interpretation of the decree, but it is evident that such was not the intention of the court. If attention had been called to it the decree would, no doubt, have been modified and the injunction confined to the prohibition of any sale under or by virtue of the pretended authority of the resolution adopted at the meeting of July 9, 1881. The omission to qualify the injunction was, I have no doubt, simply an inadvertence and oversight which the court would not have made if a modification had been requested.

The appellees, the plaintiffs below, claim that the record establishes, that the appellants have entered into a fraudulent scheme to force a disadvantageous sale of the property so that they may become the purchasers at a price below its value and thus defraud the other stockholders. And, assuming this to be the fact, they insist that this Court should not merely affirm the decree of the court below, but that it should pass upon the question of fraud and thus prevent the appellants from carrying out their scheme by calling a new meeting and ordering a sale of the same character attempted at the meeting of July 9, 1881.

Whether this enquiry could be material in any event depends upon the fact whether or not the appellants could in the case assumed legally become purchasers of the corporate property. It is a well settled principle of equity jurisprudence that a party holding a fiduciary relation to trust-property cannot become the purchaser of such property either

directly or indirectly; and if he does, the sale is voidable and will be set aside at the mere pleasure of the beneficiaries, although such fiduciary may have paid a full price and gained no advantage. (*Newcomb* v. *Brooks*, 16 W. Va., 32, 59 and cases there cited.)

This rule is not confined to trustees and fiduciaries in the technical sense of those terms, but it extends to every person coming within the reason of the rule. It embraces trustees, guardians, executors, administrators, agents, cashiers of banks, factors, auctioneers, sheriffs, commissioners in bankruptcy and their solicitors, assignees of bankrupts, attorneys at law, directors of corporations and parties bearing many other relations to each other which may not well be classified.—16 W. Va. 63, and cases cited.

In *Abbott* v. *American Hard Rubber Co.*, 33 Barb. 578, a sale of the corporate property was set aside because directors of the company were interested in the purchase. In that case the court held: "A person having a duty to perform for others can not act in the same matter for his own benefit. Hence, a trustee cannot, directly or indirectly, by himself or through the agency of another, become the purchaser of the trust estate. Neither can he purchase an interest in property and hold it for his own benefit, when in respect to such property he has a duty to perform inconsistent with the character of a purchaser on his own account." The same rule as to purchasers of corporate property by directors has been applied in many cases. *Cumberland Coal Co.* v. *Sherman*, 30 Barb. 553; *Banks* v. *Judah*, 8 Conn. 145; *Hoffman Steam Coal Co.* v. *Cumberland Coal & Iron Co.* 16 Md. 456.

The same rule does not generally apply to the stockholders of a corporation which is managed by a board of directors. Whether it does or not must depend upon the special facts of the particular case, the general rule being that a stockholder of such corporation may purchase. *Banks* v. *Judah, supra.*

In the case before us, there being no board of directors, the stockholders assumed and preformed the duties which ordinarily belong to a board of directors. The resolution passed at the alleged meeting of July 9, 1881, not only directs the sale of the corporate property, but it appoints the agent who is to make the sale, fixes the time, place, terms

and manner of sale, and leaves nothing to the discretion of the agent unless it be the mode of giving the notice of sale. This is as specific as it could have been made by a board of directors and it is well settled that no member of such board could be the purchaser of the property thus directed to be sold by such board. Do not the stockholders in this case occupy a similar position? By the act of incorporation a majority of the stockholders have the power to act for the whole. They become therefore, the agents for the whole. When they vote as a corporation to sell the corporate property, they do so for all the stockholders and not for the majority alone. (*Moore* v. *Schoppert*, 22 W. Va. 282). Here a majority of the stockholders, by their agent, resolve to sell the corporate property and, if the assumption of the appellants is true, they at the same time have determined to buy it either directly or indirectly for their own benefit. They are then in fact both seller and purchaser. This, of course, would not be permitted without the consent and approval of every stockholder of the corporation. It follows, then, that it is immaterial, whether or not, the appellants intended by the resolution of July 9, 1881, to sacrifice the property in order that they might become the purchasers, or that they intend at a future meeting to do so. For, a purchase by or for them at a sale ordered by them, acting in the capacity of directors, as we have seen, would be voidable and would be set aside at the mere pleasure of any stockholder. I, therefore, regard it as wholly unnecessary to determine whether or not the record establishes any fraudulent intent on the part of the appellants, because such intent, if it existed, could in no respect injure the other stockholders.

In what has been said it is not intened to intimate that any such fraudulent intent has been shown. I have not examined the proofs on that question except in a very casual manner and from that examination it does not appear that any actual fraud was intended.

For the foregoing reasons, I am of opinion that the decree of August 28, 1883, should be reversed and the decree of September 1, 1883, be affirmed with costs to the appellees, the plaintiffs below, they being the parties substantially prevailing, and instead of said decree of August 28, 1883, it is

ordered that a decree be here entered perpetuating the injunction with the modification hereinbefore indicated.

Reversed in part—Affirmed in part.