ALBERTA M. WORK, *et al.*

*v.*

T. L. ROGERSON, *et al.*

*AND*

JANE P. DRAKE, *et al.*

*v.*

T. L. ROGERSON, *et al.*

(No. 12683)

Submitted January 30, 1968.        Decided March 26, 1968.

*John D. Phillips, Russell L. Furbee, Chauncey D. Hinerman,* for appellants.

*Everett G. Cox, J. S. Francis, G. Charles Hughes,* for appellees.

BERRY, PRESIDENT:

These consolidated cases were previously before this Court on questions relative to the right of the former owners to redeem the delinquent lands in question. The Circuit Court of Marshall County had held that the land in question was irredeemable, the judgment in connection therewith was reversed and the consolidated cases were remanded with directions for an adjudication by the Circuit Court of Marshall County on the question as to whether the decrees of confirmation of the sale of the property involved were induced by fraud, which, if proved, would vitiate the judicial sale of the said property made in 1933 by Everett F. Moore as commissioner of school lands for Marshall County.

By a decree of February 14, 1967, the Circuit Court of Marshall County held that fraud had not been proved and dismissed the suits. Upon application to this Court by the plaintiffs, appeals and supersedeas were granted on July 11, 1967, and the two cases, which are governed by the same set of facts, were argued together and submitted on briefs and arguments for decision at the January Term, Regular, 1968.

The only essential difference in the Work and Drake suits relates to the different coal lands covered by or involved in each suit, and the sequence of events which resulted in the charge of fraud is the same in each suit. On each occasion when they have been before this Court the cases have been consolidated and treated as one proceeding with identical questions involved. In the prior decision of this Court involving these cases in May, 1965, the question before the Court was whether the former owners and their successors still had such interest in the land that they might maintain a suit to attack the validity of the sale made by the commissioner of school lands. It was held in that case, *Work, et al. v. Rogerson,* 149 W. Va. 493, 142 S. E. 2d 188, that the plaintiffs had a proper interest to maintain the suits but as the question of fraud had not been decided by the Circuit Court of Marshall County, the cases were remanded to said Court to decide that, and any other, question necessarily raised by the pleadings and proof.

The statement of facts relating to the background and other details involved in connection with the various proceedings and actions is set forth at length in the former opinion of this Court, referred to herein. Consequently, it is unnecessary here to go into it extensively other than to refer to the matters relating to the charge of fraud.

Two tracts, known as the Denny block consisting of 4126.95 acres and the Phillips block consisting of 7,257 acres, are all that are actually involved in these cases. However, there were originally a total of seven suits instituted by Everett F. Moore as school land commissioner, all of which were similar in disposition and resulted in the sale of over 33,000 acres of undeveloped coal land having an assessed value of $1,321,492 to T. L. Rogerson and Walter A. McGlumphy for a total price of $10,800 and eventually held by the said Rogerson for the benefit of the three parties involved in all of the transactions. Controversies arose in connection with all seven school land commissioner suits similar to the two cases involved in the case at bar, but the matter was compromised in two of the suits leaving five of the suits upon which proceedings were instituted to nullify the sales. After the institution of the proceedings

to nullify the sales on the five tracts of coal lands three were compromised by the parties which left only the two school land suits involving the Phillips and Denny blocks which are now before this Court.

In order to understand how the question of fraud arose it is necessary to consider the procedure followed in connection with all seven blocks of this coal land. All but the Whetstone block were deeded directly to T. L. Rogerson by Everett F. Moore, school land commissioner. The Whetstone block was deeded to Walter A. McGlumphy who was a member of the Marshall County Bar and an attorney for Rogerson, and had also been a commissioner in chancery in certain referrals relating to these cases. McGlumphy later conveyed the Whetstone tract to Rogerson. On the Whetstone, Liberty and Fish blocks a decree of sale was obtained on July 15, 1931. These sales were followed by decrees of confirmation for the Whetstone block in the name of McGlumphy on March 18, 1933, for the Liberty block on August 11, 1934, and the Fish block on March 15, 1935. On August 14, 1934, Rogerson received a deed for the Liberty tract from Commissioner Moore and also a deed for the Whetstone tract from McGlumphy, thus owning both tracts. On the same day, August 14, 1934, Rogerson, McGlumphy and Moore signed an agreement called "Declaration of Trust in Real Estate" covering the Liberty and Whetstone blocks in which Rogerson, to whom the blocks were deeded or sold, declared that he held an undivided two-thirds (⅔) interest in these tracts for the use and benefit of McGlumphy and Moore and that he would convey such interest to them when requested. The final decree and report of the school land commissioner as to the Whetstone block was entered September 16, 1933, which of course was after the sale and decree of confirmation to McGlumphy for this tract but before the deed for the tract was made August 14, 1934 to Rogerson by McGlumphy and also before the Declaration of Trust covering said block was executed. The final decree for the Liberty block was entered March 12, 1935. The deed to Rogerson for the Fish block was dated March 20, 1935 and the Declaration of Trust dated June 24, 1935 covering the Fish block was

identical to the Declaration of Trust for the Whetstone and Liberty blocks. The final report of the school land commissioner for the Fish block was filed and final decree entered on July 11, 1935.

On the Faith, Rice, Denny and Phillips blocks the decree of sale for each was July 12, 1933. The decree of confirmation was dated March 15, 1935, and the deed to Rogerson was dated March 20, 1935. On June 24, 1935 a second Declaration of Trust identical to the Declaration of Trust on the Whetstone and Liberty blocks was entered into by Rogerson, Moore and McGlumphy covering Fish, Faith, Rice, Denny and Phillips blocks. A final report of school land commissioner Moore on the Fish, Faith, Rice, Denny and Phillips blocks was made July 11, 1935 to the Circuit Court of Marshall County in which it was stated that all of the decrees of the Court had been complied with, but no mention whatsoever was made of the prior declaration of trust covering all of these blocks purchased in the name of Rogerson. After receiving the Commissioner's report a final decree was entered by the Court on July 11, 1935, dismissing the suits from the docket.

The Legislature of the State of West Virginia, by Chapter 17, of the extraordinary session of 1932, which was enacted on August 23, 1932, and effective from passage, declared a moratorium on all school land commissioner's suits for a period of three years, which would have expired on August 23, 1935. Prior to the effective date of this legislation the defendant Everett F. Moore, as school land commissioner, had instituted suits against the Whetstone, Liberty and Fish blocks. The suits concerning the remaining four blocks of Faith, Rice, Denny and Phillips, the last two being the blocks now before this Court, were instituted after the effective date of the above mentioned statute. The statute contained a clause which provided that suits involving such property might be sold by the State at the request of the property owners or by order of the Court for good reasons shown. Moore, after the effective date of the above mentioned moratorium statute, filed an amended report to the Court asking for permission to proceed against the Faith,

Rice, Denny and Phillips blocks for the reasons that the four blocks of coal land were adjacent to or in close proximity to other blocks of coal land on which he had instituted suits prior to the effective date of the moratorium statute prohibiting the institution of such suits, and that if he were allowed to prosecute suits against the four tracts, which included the two involved in the case at bar, it would enhance the value of all the land in question if the purchaser or purchasers could have the opportunity to acquire the similar tracts in the same area. The court granted this permission and suits were prosecuted against the said tracts of Faith, Rice, Denny and Phillips. The purchaser, or purchasers, turned out to be the same people.

Having thus obtained the right to prosecute suits for the sale of all the blocks of coal land, Moore then proceeded against all of them. During the course of such proceedings, the acts which are the basis for the fraud alleged in these suits occurred.

Under date of August 14, 1934, Rogerson, McGlumphy and Moore signed an agreement called "Declaration of Trust in Real Estate," covering the Liberty and Whetstone blocks in which Rogerson declared that he was possessed of an undivided two-third (⅔) interest in these tracts and expressly declared that he held the undivided two-third interest in said tracts in trust for the use and benefit of McGlumphy and Moore and would make conveyance to them, or either of them, for their undivided interest therein; that the legal title to said tracts was taken and held by Rogerson; that he furnished the purchase money for said tracts, would keep them assessed in his name, finance the sale of the property and if sold would deduct the purchase money, taxes and other expenses and divide the remainder among the three people named in the declaration of trust. At the time the declaration of trust was executed, a final decree had been entered in the case of the Whetstone tract which was sold by Moore to McGlumphy on May 31, 1933, but conveyed to Rogerson fourteen and one-half months later on the same day the declaration of trust was executed; however, the final decree in the Liberty case was not entered until seven months after the declaration of trust

involving said property was executed, so the suit as to Liberty tract was still pending when Moore acquired an interest in it.

On June 24, 1935, the same three people, McGlumphy, Moore and Rogerson, entered into identical declarations of trust covering the Fish, Faith, Rice, Denny and Phillips tracts, and at that time a final decree had not been entered in the suits involving any of these tracts as provided for in the statute applicable thereto at that time, 1931 Official Code of West Virginia, Chapter 37, Article 3, Section 32, and the final decree was not entered until three weeks later. The court was not informed of the existence of any of these trust agreements at any time before the final decree was entered, and the report of Moore as the school land commissioner did not contain any mention thereof. The trust agreements were not recorded until May 2, 1945, ten years after they were entered into. The recording of the declaration of trust by Moore and McGlumphy was apparently done to inform L. T. Heil of the situation when Moore learned that Rogerson was considering the conveyance of the property involved in the declaration of trust to Heil with whom Moore and McGlumphy later entered into an option to purchase their interest in said trust property for $100,000. The conveyance of the property was not made by Rogerson to Heil until January 6, 1948, and the purchase price was $75,000, according to some evidence, but the deed does not specify an amount except $10.00. At that time Heil had both actual and constructive notice of the declaration of trust which showed that Rogerson had been conveyed the property by Everett F. Moore, school land commissioner. Heil was either a friend, business associate or client of all the parties to the trust agreement, and while it is contended by the appellees that he was a bona fide purchaser for value, this question was not decided by the trial court, and, therefore, is not before this Court for decision at this time.

At the time the trust agreements in question were entered into the statute then in effect, Chapter 37, Article 3, Section 25, of the 1931 Official Code of West Virginia, provided: "* * * no commissioner of school lands shall become

the purchaser of any school lands at the sale thereof, *or be interested therein, * * *.*" (Emphasis supplied.) The first trust agreement was dated three days after the sale of the Liberty block had been confirmed, and was in existence about seven months before the sales of the remaining five tracts were confirmed. ·

It appears from the record that Moore and McGlumphy were instrumental in having a case certified to the Supreme Court of Appeals in 1934, styled *State* v. *Phillips,* 115 W. Va. 362, 176 S. E. 233, which involved the same Phillips tract appearing in the *Work* case now before this Court. It was held in that case that the entire Phillips block or tract could be sold even though taxes had been paid by some of the owners of an undivided interest, but that inasmuch as all of the taxes had not been paid on all the undivided interests the entire tract could be sold for delinquent taxes. The question involved in that case was raised by William S. Humbert, one of the owners of an undivided interest in the Phillips tract, and he employed McGlumphy as his attorney to represent him in the case of *State* v. *Phillips,* at the suggestion of Everett F. Moore, the school land commissioner, who later sold the entire tract after the decision of this Court in 1934. It might be well to note that the statute was amended after the decision in this case so that the undivided interests could be assessed separately on the land books to the owners and taxes paid thereon on such interests and the entire tract need not be sold for delinquent taxes of one or more. Code, 11-4-9, as amended.

The record also shows that Moore, the school land commissioner, made a report to the Court that McGlumphy had paid the purchase money for the Whetstone block when in fact it had come from Rogerson. In the Liberty block the report to the Court and the decree of confirmation were altered by erasures by which Rogerson's name was substituted for McGlumphy. Moore endeavored to explain this by saying that it is a common practice for attorneys to buy lands for a client and that he thought McGlumphy was buying the land in question but learned later that it was Rogerson.

The voluminous record of almost 2700 pages contains lengthy testimony by Moore to the effect that the sales were proper despite the declarations of trust. In defending the charge of fraud in the sale of the property in question it was shown that Moore asserted that he had continued the sale of the property in question several times in an effort to obtain larger bids, and that Moore had visited prospective buyers in New York and Philadelphia in an effort to interest them in the purchase of the property and had been told by one large company that they would not give five cents an acre for the property. Moore also testified that he had made efforts to contact the landowners before the sale and get them to redeem the property, and that the reason he was anxious to sell was to get it back on the land books so the state could obtain taxes from the said property, all of which took place during the great depression. It is interesting to note that in 1947, before these suits were instituted in 1949 to set aside the sale of the property in question, the Legislature for the State of West Virginia released all taxes due on any lands which appeared on the Auditor's record as unsold or unredeemable for the year 1935 and all years prior thereto. Code, 11a-4-39, as amended.

The defendant Moore denied that any agreement had been made with Rogerson and McGlumphy with regard to the purchase of various tracts of coal land prior to the date of the declarations of trust, and contends that once the land was sold there was no prohibition against his acquiring an interest in any of the lands involved. He also denied that the withholding of the recording of the declarations of trust was done to prevent the knowledge of information contained in the declarations of trust. However, there is no question but that the defendant Moore was still acting as school land commissioner at the time the declarations of trust were executed by Rogerson, Moore and McGlumphy, and continued as such until the law ended his power to function as of December 31, 1935. Code, 37-3-4, as amended. Notwithstanding the denial of any withholding of knowledge or concealing the provisions of the declarations of trust, neither was recorded to afford the public

knowledge of such agreement until ten years after it was executed.

The defense of laches was also imposed inasmuch as these suits to set aside the sales of the lands in question were not instituted until 1949, over three years after the declarations of trust were recorded. It does not appear that the landowners had any actual knowledge of the declarations of trust until some time after they were recorded although they would have constructive notice after the recordation thereof.

The defendants T. L. Rogerson, Walter A. McGlumphy and L. T. Heil died after these suits were instituted in the Circuit Court of Marshall County, but before any extensive hearings were held, and they did not testify in these cases with the exception of a short deposition taken at McGlumphy's home. The defendant Moore explained his and McGlumphy's connection with Rogerson to the effect that Rogerson was a banker, unskilled in coal and land dealings and that he needed the services of both of them for the purpose of contacting purchasers for the sale of the lands in question and checking the title to said lands by virtue of the fact that both were trained and skilled in such matters, and that such services amounted to a consideration on their part in connection with the declarations of trust pertaining to such lands. It appears from the record that not only did the defendant Moore, as school land commissioner, convey the coal lands involved in the declarations of trust to Rogerson, but he also conveyed other real property to him when Moore was trustee in a bankruptcy proceeding. It appears that the services of Moore and McGlumphy were not used in any manner in the final disposition of the coal lands because apparently some difficulty had arisen between Rogerson, Moore and McGlumphy and Rogerson obtained Heil as a purchaser of the coal lands and conveyed such coal lands to Heil over the objections of Moore and McGlumphy, because they had previously given an option to sell their interest to Heil for a larger amount of money than Rogerson obtained from the sale of the property to Heil. It is indicated that some dispute arose over the meaning of the provisions of the declarations of

trust. Moore and McGlumphy apparently took the position they had the right under the provisions of the declarations of trust to have one-third of the property conveyed to each of them after reimbursement to Rogerson for the cost of the property and taxes paid thereon. Rogerson apparently took the position that under the declarations of trust they only had the right to one-third of the net proceeds. In any event, it appears that without any positive services on the part of Moore and McGlumphy, Rogerson sold the property to Heil for about $75,000 and distributed one-third of the net proceeds to each of them. However, the distribution was apparently not satisfactory because Moore prayed for an accounting in a cross-claim.

Everett F. Moore testified at the original hearing before the trial court but died thereafter, and the cases have been revived as to each of the said defendants in the names of their personal representatives.

As heretofore stated the only issue in these cases is whether the decree of confirmation for the sale of the property in question was induced by fraud, and whether the trial court erred in its finding that they were not induced by fraud and in dismissing the bills of complaint.

The general rule with regard to fraud is that it is never presumed and when alleged it must be established by clear and distinct proof. 37 C.J.S., Fraud, Section 94; *Bennett v. Neff*, 130 W. Va. 121, 42 S. E. 2d 793; *Brown v. Crozer Coal & Land Co.*, 144 W. Va. 296, 107 S. E. 2d 777; *Ward v. Smith*, 140 W. Va. 791, 86 S. E. 2d 539; *Campbell v. Campbell*, 146 W. Va. 1002, 124 S. E. 2d 345. However, this general rule is qualified and the burden is shifted where a fiduciary relationship exists. 37 C.J.S., Fraud, Section 95; 8 M.J., Fraud and Deceit, §56, page 747; *Nicholson v. Shockey*, 192 Va. 270, 64 S. E. 2d 813; *Atkinson v. Jones*, 110 W. Va. 463, 158 S. E. 650; *Campbell v. Campbell, supra.*

This Court has followed and adhered to this rule which is clearly stated in the first point of the syllabus of the case of *Atkinson v. Jones*, 110 W. Va. 463, 158 S. E. 650, which reads as follows: "The law does not presume fraud, and he who alleges it must clearly and distinctly prove it; but

fraud may be legally inferred from facts and circumstances calculated to establish it, and in a case where a fiduciary relationship exists and an inference of fraud arises, the burden of proof is then on the alleged feasor to establish the honesty of the transaction."

It has been repeatedly held that fraud does not have to be proved by direct and positive evidence but may be established by circumstantial evidence. 8 M. J., Fraud and Deceit, §56; *Cook* v. *Hayden,* 183 Va. 203, 31 S. E. 2d 625; *Pendleton* v. *Letzkus,* 91 W. Va. 612, 114 S. E. 246. The matter is succinctly stated in point 2 of the syllabus in the *Pendleton* case, wherein it is stated: "It is not necessary that such an arrangement or agreement be proved by direct evidence. If it satisfactorily appears from the circumstances shown, and from the conduct of the parties during the sale, *and subsequent thereto,* that such an agreement existed, such showing will be as effective to set aside the sale as though proven by direct evidence." (Emphasis supplied.) Circumstances and transactions may be even stronger than direct proof and furnish satisfactory proof of fraud that will outweigh the answers of defendants and evidence of the witnesses. *Cook* v. *Hayden,* 183 Va. 203, 31 S. E. 2d 625; *Pendleton* v. *Letzkus, supra.*

It is contended by the appellees, the defendants below, that there is no proof of any fraud with regard to any understanding that may have been had by Rogerson, Moore and McGlumphy for the purchase of the lands in question at the school land commissioner's sale. This contention is adequately answered in the opinion of *Pendleton* v. *Letzkus, supra,* at page 621, wherein it is stated: "It is urged that there is no evidence tending to show any understanding between the defendants in this case as to the purchases at this tax sale. There is no direct evidence, but there are many circumstances which compel us to the conclusion that these defendants knew in advance just what was going to happen when that sale was made. Ordinarily such understandings cannot be proved by direct evidence. They have to be drawn from circumstances. The things which happen at the sale itself, taken in connection with the acts of the parties afterward, may leave no room to doubt that there

was such an understanding or agreement at the time of the sale, and where these circumstances exist they will be just as effectual to prove the fact as though direct evidence were introduced for that purpose. In fact, it may be said that such circumstances are proof even of a stronger character than the direct testimony of witnesses, for they are generally adduced from the permanent records made at the time, while oral testimony of witnesses is subject to the uncertainties arising from the failure of memory, as well as from the tendency of witnesses to relate their story of the transaction in the light most favorable to the contention they are called upon to prove. Where a county officer, or his deputy or assistant, engages in the business of buying lands at delinquent tax sales, he must expect that his conduct will be closely scrutinized." A person while actually holding a fiduciary relationship cannot purchase or be interested in, either directly or indirectly, any property sold by him in such capacity, and such sale is voidable and may be set aside. *Newcomb v. Brooks*, 16 W. Va. 32; *Reilly v. Oglebay*, 25 W. Va. 36. This proposition is stated in point 3 of the syllabus of the *Reilly* case in the following language: "A party holding a fiduciary relation to trust-property cannot become the purchaser of such property, either directly or indirectly; and if he does the sale is voidable and may be set aside at the mere pleasure of the beneficiaries, although the price may have been adequate and the purchaser gained no advantage."

The appellees rely on the case of *Board of Trustees of Oberlin College v. Blair et al.*, 45 W. Va. 812, 32 S. E. 203, for the proposition that a fiduciary or trustee who sells property to a third person may afterwards acquire title to the property and such fact will not be grounds for voiding the sale. In that case the fiduciary was fully discharged from his trust and no longer had any fiduciary relationship with regard to the sale of the property and the evidence showed that the property was sold to a third person in good faith and then he later became interested in the property. An entirely different situation is presented in the case at bar because the defendant Moore remained as the school land commissioner long after he had acquired an interest in

the property sold by him as such commissioner, and in his final report to the Court he said nothing about the declaration of trust wherein he obtained the one-third interest in the property sold by him. It can be reasonably assumed that had he advised the trial court at that time of the declarations of trust entered into by him, McGlumpy and Rogerson, the court would never have entered the final decree dismissing the suits from the docket. Then, too, the transactions and circumstances of the sale of the seven tracts of coal land show without any denial that a declaration of trust had been previously executed by Moore, McGlumpy and Rogerson, covering two blocks of similar coal lands adjacent to the five blocks of coal land which were covered by a declaration of trust identical with the former declaration of trust except for the coal tracts involved. It is also an undenied fact that the declarations of trust were not recorded so that no one but the parties thereto would have any knowledge of the interest the school land commissioner had in the coal lands sold by him as commissioner of school lands until ten years after the sale thereof and the execution of the declarations of trust.

Where a fiduciary while actually holding such relationship acquires interest in property from a sale thereof, such sale is voidable although the fiduciary may have given adequate consideration and gained no advantage whatsoever. See *Bank of Mill Creek* v. *Elk Horn Coal Corp. et al.,* 133 W. Va. 639, 57 S. E. 2d 736. Where a fiduciary relationship exists and suits are filed to set aside the sale of property, the defense of laches is not usually regarded with favor and the lapse of time is not considered as important as in other cases, and where facts relied on to set aside such conveyance are concealed laches will not as a rule bar the action in such cases. *Bank of Mill Creek* v. *Elk Horn Coal Corp. et al., supra.* In the case at bar the landowners or their successors in title could have had no knowledge of the transactions shown in the declarations of trust until they were recorded in 1945, and the time that elapsed before the institution of these suits in 1949 would not be sufficient under the circumstances to bar relief to the plaintiffs or appellants on the ground of the doctrine of laches.

The general rule is that the findings of a trial chancellor will not be disturbed on appeal unless such findings are clearly wrong or against the clear preponderance of the evidence, but it is well established and adhered to that an appellate court will not hesitate to reverse a decree when it appears from the evidence that it is contrary to the preponderance of the evidence or is clearly wrong. *Lieberman v. Lieberman*, 142 W. Va. 716, 98 S. E. 2d 275; *Cyrus v. Tharp*, 147 W. Va. 110, 126 S. E. 2d 31; *Tokas v. Arnold Co.*, 122 W. Va. 613, 11 S. E. 2d 759. This rule of law is clearly set out in the third point of the syllabus in the *Tokas* case in the following language: "This Court will reverse a trial chancellor's findings of fact if clearly wrong or against the preponderance of the whole evidence."

The circumstances and transactions in the case at bar show by uncontradicted evidence in the record that the defendant Moore, as school land commissioner, sold to T. L. Rogerson or W. A. McGlumphy seven large tracts of coal lands apparently similar and in the same locality, the legal title to which all ultimately vested in Rogerson, and *while the said Moore was still school land commissioner* declarations of trust were prepared and drawn up by him and executed by Rogerson, McGlumphy and Moore covering the coal lands in all seven tracts wherein Rogerson unmistakenly stated that he held two-thirds of all the coal lands in trust for Moore and McGlumphy and that their said two-thirds interest would be conveyed to them at their request or if sold each would be given one-third of the proceeds less the cost of the land and taxes paid thereon. The declarations of trust were identical in language and the only difference was the tracts covered. The dates of the declarations of trust varied from three days after the date of confirmation to three months, but outside of one exception all of the declarations of trust were entered into *before* the final report made by the commissioner of school lands which made no mention of the trusts. The declarations of trust were not recorded for ten years after they were executed and no one but Rogerson, McGlumphy and Moore had knowledge of such declarations of trust. These transactions

and circumstances are sufficient proof to support the plaintiffs' contention that the decrees pertaining to the sale of the coal lands involved were induced by fraud despite the denial of the defendant Moore in his testimony. *Pendleton v. Letzkus, supra; Reilly v. Oglebay, supra; Cook v. Hayden, supra; Nicholson v. Shockey, supra; Atkinson v. Jones, supra.*

This Court has held that when during the hearing of a case the evidence decidedly preponderates against the findings of a trial chancellor thereon this Court will reverse the decree. *McKown v. Citizens' State Bank of Ripley,* 91 W. Va. 716, 114 S. E. 271; *Huntington Development & Gas Co. v. Topping,* 115 W. Va. 364, 176 S. E. 424. Notwithstanding the preponderance of the circumstantial evidence as to the proof of fraud related above, the trial court apparently erred in the application of the rule with regard to the burden of proof applicable in a case such as the one presented here.

It is repeatedly indicated in the memorandum opinion of the trial chancellor in this case that the burden of proof with regard to the alleged fraud rested solely on the plaintiffs and that since defendants denied it, the matter was not proved. The memorandum opinion having been made part of the record, we are authorized to consider the statements contained therein in order to determine the basis or reasons for that court's decree. *Sargent v. Malcomb,* 150 W. Va. 393, 146 S. E. 2d 561. There is no question but that the defendant Moore was in a fiduciary capacity when the land in question was sold, when the decrees of confirmation were entered, when the declarations of trust were executed and the final decree obtained and in such cases of fiduciary relationship where there may be indication of fraud, a presumption of fraud arises and the burden of going forward with the evidence rests upon the fiduciary to establish the honesty of the transaction. 37 C.J.S., Fraud, §95; 8 M. J., Fraud and Deceit, §56; *Atkinson v. Jones, supra; Nicholson v. Shockey, supra.* See *Campbell v. Campbell,* 146 W. Va. 1002, 124 S. E. 2d 345. Certainly the evidence of the defendant Moore who while a fiduciary was the moving and principal party in connection with the transactions

and circumstances involved in this case, wherein he says that no fraud was committed, does not carry the burden of going forward sufficiently to establish the fact that the decrees in question were not induced by fraud. To the contrary, the transactions and circumstances tend to establish or prove the charge of fraud, and his evidence does not adequately explain it away.

The suits in these consolidated cases were instituted before the effective date of the Rules of Civil Procedure for trial courts in West Virginia, July 1, 1960, and the old procedure was used throughout all proceedings in connection with these consolidated cases.

For the reasons contained in this opinion, the decree of the Circuit Court of Marshall County is reversed and this consolidated case is remanded to that Court for determination of the question with regard to the defendant L. T. Heil being a bona fide purchaser for value without notice in connection with the sale of the property from T. L. Rogerson to him, and for such further proceedings as may be proper in conformity with this opinion.

*Reversed and remanded*
*with directions.*