362 S.E.2d 759

**Pauline F. DILLON, et al.**

v.

**Rex L. DILLON, Individually, etc., et al.**

No. 16990.

Supreme Court of Appeals of
West Virginia.

Oct. 23, 1987.

William Flanigan, William H. Sanders, II, Princeton, for plaintiffs.

David L. Parmer, Hinton, for defendants.

PER CURIAM:

Rex L. Dillon, the defendant below, appeals from a judgment of the Circuit Court of Monroe County which set aside a deed conveying real estate to him and restored the legal title of the real estate to the plaintiff, Pauline F. Dillon. On appeal, he asserts two errors. First, he contends the trial court erred in permitting the jury to find that a confidential relationship existed between the plaintiff and the defendant. This caused the burden of proof to shift to the defendant to prove the bona fides of his obtaining the real property. Second, he contends that the jury verdict was contrary to the law and the facts.

This case involves a property dispute among the members of the Dillon family which arose after the death in 1980 of Kelly Dillon, Sr., whose wife, Pauline, is the plaintiff. Basically, the plaintiff, Pauline Dillon, contended that the defendant took undue advantage of her by having her sign a deed which gave him a two-thirds interest in certain real property.

The Dillons started a dairy farm in the late 1960's after Kelly, Sr., and his wife, Pauline, moved to the 149-acre homeplace owned by Kelly Sr.'s mother, Sarah Dillon. Kelly, Sr. and Pauline worked the farm with sporadic assistance from other family members. In 1975, Sarah Dillon and her three sons, Kelly, Sr., Rex, and Dale, individually and jointly owned various parcels of land consisting of almost 630 acres.[1] They owed approximately $153,000 to lending institutions in mortgages and other loans secured by the property.

At this point, the facts are sharply disputed. It was the plaintiff, Pauline Dillon's, theory that her husband agreed to buy the property and to pay off the existing indebtedness on the property by securing a Farmers Home Administration (FHA) loan. In support of the theory, the plaintiff introduced the deed conveying the property to her and her husband. It was dated September 9, 1975, and the grantors were Sarah C. Dillon, widow, Rex Dillon, divorced, Henry Dale Dillon, and Phyllis M. Dillon, his wife. The deed conveyed a fee simple title with the express right of survivorship in the grantees and contained no language as to any arrangement between the parties. The deed also contained a declaration of consideration in the amount of $130,000, and had documentary stamps affixed in this amount.

The plaintiff also introduced evidence from an employee of the FHA that she and her husband borrowed a total of $140,000 from the FHA in September of 1975, and this paid off the existing indebtedness. The FHA loan application was introduced which recited that the purpose of the loan was: "To refinance debts and buy out brothers."

On the other hand, Rex Dillon maintained at trial that the Dillon family decided to pool their property to obtain the FHA loan to consolidate their indebtedness and obtain additional capital for dairy farm improvements. In order to meet FHA requirements, the pooled property was transferred into the name of the eldest son, Kelly Dillon, Sr., and his wife. It is not

---

1. In addition to the 149-acre home property owned by Sarah Dillon, her three sons owned either individually or jointly with their wives, the following outside acreage which surrounded the home property: Kelly, Sr., 159.93; Dale, 232.94; and Rex, 85.93, for a total of 478.80 acres.

disputed that they obtained the loan and continued to manage the farm.[2] He also asserted that a handwritten contract, dated September 15, 1975, was entered into between Kelly Dillon, Sr., and Pauline Dillon and the other brothers to redivide the pooled property, called the "outside land," equally among the three brothers or their survivors upon payment of the Farmers Home loan or the death of any of the brothers.[3]

The plaintiff, Pauline Dillon, disclaimed any knowledge of the agreement and testified that she had not signed it. The court submitted the issue of the validity of the contract as to Pauline Dillon to the jury which, by its general verdict, resolved it in her favor. This finding by the jury is significant, as part of the plaintiff's theory was that the defendant, as executor, had advised her that the deed giving him the two-thirds interest was an appropriate step in the proper administration of the estate. No evidence was presented that the plaintiff was ever advised as to the legal effect of the original 1975 survivorship deed given by the Dillons to the plaintiff and her husband.[4] There was no dispute that the conveyance of the two-thirds interest to Rex Dillon was for only a nominal consideration.[5]

Furthermore, the plaintiff, Pauline Dillon, presented evidence during the trial that after her husband's death, she relied on the defendant, Rex Dillon, who was the executor and took over the dairy farm. She testified that she was uneducated, that her husband had conducted the business affairs for the dairy, and that after his death she relied on Rex Dillon to make those decisions. She also testified that her husband's will named her as executrix, but that she declined to serve because she felt inadequate to the task. Rex Dillon, who was named as the alternative, was then appointed to serve.

■ We acknowledged in *In Re: Estate of Lapinsky v. Sparacino*, 148 W.Va. 38, 132 S.E.2d 765 (1963), that an executor or administrator of an estate has a duty to exercise the "highest degree of good faith", and concluded in Syllabus Point 4, in part, as follows:

> "An executor or administrator of the estate of a deceased person is under a duty to take custody of the estate and to administer it in such a manner as to preserve and protect it for ultimate distribution. In the discharge of such duty, he is held to the highest degree of good faith; and is required to exercise that degree of care and diligence which prudent persons ordinarily exercise, under like circumstances, in their own personal affairs."

*See also*, Syllabus Point 1, *Tabler v. Weller*, 176 W.Va. 267, 342 S.E.2d 234 (1986); *Harrison v. Miller*, 124 W.Va. 550, 21 S.E.2d 674 (1942); *see generally*, 31 Am. Jur.2d, *Executors and Administrators* §§ 216–17 (1967).

■ We believe there was sufficient evidence introduced by the plaintiff to sustain her theory that a fiduciary or confidential relationship existed, and it is clear that the jury verdict did resolve this issue in her favor.

---

**2.** Shortly after the property was pooled, Kelly, Sr. and Pauline Dillon entered into a contract with Sarah Dillon to reconvey the homeplace when the outstanding obligations against the property were fully paid or if Kelly, Sr., should predecease Sarah Dillon. The 149–acre home property was conveyed to Rex Dillon with a life estate to Sarah Dillon in 1981 after the death of Kelly, Sr., and this property was not at issue in the litigation.

**3.** Two tracts of outside land consisting of 80 acres and 87 acres were sold after the death of Kelly Dillon to third parties, and the proceeds used to pay the FHA loans, and this acreage was not involved in the litigation.

**4.** It is generally held that with a survivorship deed, in the absence of a prior conveyance before death by one of the joint tenants, the surviving joint tenant takes the entire interest. *See generally, Herring v. Carroll*, 171 W.Va. 516, 300 S.E.2d 629 (1983); 20 Am.Jur.2d, *Cotenancy and Joint Ownership* § 3 (1965).

**5.** The two-thirds interest was conveyed by deed dated February 21, 1981 to Philip D. Mooney and Carole S. Mooney, his wife, as straw parties, who, by separate deed on the same date, conveyed the interest to Rex Dillon. The court set aside the transfers contained in the two deeds.

 Error is also assigned with regard to instructions that place the burden of proof on the fiduciary to show the bona fides of the transactions. We have established law in this area in *Work v. Rogerson,* 152 W.Va. 169, 160 S.E.2d 159 (1968), and *Kanawha Valley Bank v. Friend,* 162 W.Va. 925, 253 S.E.2d 528 (1979). In both of these cases, we dealt with the question of burden of proof where a person who has a fiduciary relationship in property acquires an interest in such property. We stated these general rules in Syllabus Points 6 and 10 of *Work:*

"6. Where a fiduciary while actually holding such relationship acquires interest in property from a sale thereof, such sale is voidable although the fiduciary may have given adequate consideration and gained no advantage whatsoever.

\* \* \* \* \* \*

"10. Where a fiduciary relationship exists and there is an indication of fraud a presumption of fraud arises and the burden of going forward with the evidence rests upon the fiduciary to establish the honesty of the transaction."

 The trial court gave two instructions about the burden of proof when a confidential or fiduciary relationship exists.[6] The non-mandatory language of these instructions presented a question of fact for the jury to initially resolve as to whether the plaintiff proved that a confidential or fiduciary relationship existed. The instructions then indicated that the burden of proof to show good faith shifted to the defendant only if this initial question was resolved in plaintiff's favor. These instructions were properly within the legal principles set out in *Work* and followed in *Friend.*[7]

The question of the sufficiency of the evidence is governed by the rule set out in Syllabus Point 2 of *Miami Coal Co., Inc. v. Hudson,* 175 W.Va. 153, 332 S.E.2d 114 (1985):

" 'In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.'

6. Plaintiff's instructions read as follows:
 "PLAINTIFFS' INSTRUCTION NO. B
 "The Court instructs the jury that if you believe that the plaintiffs have proven to you by a preponderance of the evidence that they were uncapable [sic] of understanding the nature of the real estate transaction and were deficient in business affairs and lacked competent knowledge of the same and if you also believe from a preponderance of the evidence that the defendant, Rex Dillon, stood in a relationship to Pauline Dillon as confidential adviser and that she entrusted her affairs to him and that he took undue advantage of this relationship and practiced upon her undue influences as may be proved to you by all the evidence in the case, including the circumstantial evidence, then the duty is upon the defendants to show this jury that the deed transaction by which Rex Dillon obtained a two-thirds interest in the 'outside lands' was obtained honestly and fairly and in the utmost good faith or was the result of a valid obligation as represented by a prior written agreement between the parties before Rex Dillon was appointed to and assumed such confidential and trust relationship toward the plaintiff, Pauline Dillon."

 "PLAINTIFFS' INSTRUCTION NO. 8
 "The Court instructs the jury that if you find that plaintiffs have proved that Defendant Rex L. Dillon held a confidential or fiduciary relationship with plaintiffs and that Defendant Rex L. Dillon obtained any benefit from that relationship you must presume that Defendant Rex L. Dillon used fraud to obtain that benefit and Defendant Rex L. Dillon must prove to you by a preponderance of the evidence that the benefit was obtained honestly, fairly and in the utmost good faith, or that the transfer of the two-thirds interest in the outside land to Rex Dillon was pursuant to a valid written agreement made before Rex Dillon occupied any confidential or fiduciary relationship to the plaintiff, Pauline Dillon."

7. The single Syllabus point of *Friend* stated:
 "A presumption of constructive fraud may arise in connection with joint bank accounts with survivorship, if the parties to the joint account occupy a fiduciary or confidential relationship. This presumption requires the person who benefits from the creation of the account to bear the burden of proving that the funds were, in fact, a *bona fide* gift."

Syl. Pt. 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983)."

*See also, Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975); *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966).

■ Reviewing the evidence under this standard, we believe the jury could well have concluded that the initial conveyance to Kelly, Sr. and Pauline Dillon was in fee simple and for purposes of acquiring the outside lands. It rejected, under proper instructions, Rex Dillon's theory that the contract to reconvey upon the death of Kelly, Sr. was not valid. Finally, it could well have concluded that his position as executor created a confidential relationship with the plaintiff, such that he was not entitled to convey to himself two-thirds of the remaining outside lands in 1981.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Monroe County.

Affirmed.