THE KANAWHA VALLEY BANK,

*a corporation*

*v.*

MARGUERITE JUDY FRIEND, *et al.*,

*Appellants*

*and*

THEODORE B. DUNBAR,

*Appellee*

(No. 14914)

Decided April 10, 1979.

*Davis & Nesius, John J. Nesious* for appellants.

*Robert J. Louderback* for appellee.

*Jackson, Kelly, Holt & O'Farrell, Lee O. Hill* for Kanawha Valley Bank.

MILLER, JUSTICE:

The Kanawha Valley Bank, as executor of the estate of Manassah S. Judy, filed a declaratory judgment action in the Circuit Court of Kanawha County. The purpose of the action was to determine the ownership of funds in two joint bank accounts, which were in the names of Mr. Judy and Mr. Theodore Dunbar and which had rights of survivorship. The defendants in the suit were Mr. Dunbar and the four nieces of Mr. Judy— Marguerite Judy Friend, Virginia Judy Smith, Catherine Ours Evans, and Nelli Ours Leatherman. The nieces were the beneficiaries under the will.

The trial court held that the defendant, Mr. Dunbar, owned the money in the accounts by virtue of the survivorship provisions of W.Va. Code, 31A-4-33. The four nieces bring this appeal contending that the court ignored the presumption of constructive fraud, which existed as a result of the fiduciary relationship between Mr. Judy and Mr. Dunbar. We agree, and consequently reverse the trial court.

The case was tried initially before a commissioner whose findings were adopted by the Circuit Court. The findings show that the testator died on August 22, 1970, at age 77. Prior to his death, Mr. Judy was physically frail and suffered from advanced arteriosclerosis manifested by signs of senility, including occasional forgetfulness and restlessness or nervousness. He was not, however, mentally incompetent.

The defendant, Dunbar, was a brother-in-law and business associate of Mr. Judy and had for some time assisted him with his financial affairs and other needs. A housekeeper was employed to look after his home, prepare meals, and give Mr. Judy his medication.

On November 24, 1969, Mr. Judy executed a general power of attorney in favor of Mr. Dunbar to facilitate

the handling of his financial and business affairs. On February 17, 1970, Mr. Dunbar delivered to the bank certain signature cards, bearing his signature and that of Mr. Judy, for the purpose of creating joint checking and savings accounts with survivorship.[1]

In May of 1970, at the direction of Mr. Dunbar, $30,000 was placed in the joint savings account, which money came from matured United States Treasury Bills owned by Mr. Judy. When Mr. Judy died in August of 1970, there was $32,571.82 in the joint savings account and $4,646.26 in the joint checking account.

In *Dorsey v. Short*, ___ W. Va. ___, 205 S.E.2d 687 (1974), we reviewed in some detail the statute authorizing the creation of joint bank accounts with right of survivorship, which the common law termed a joint tenancy. *Dorsey's* central point was that the party creating the joint tenancy (the donor) could attach conditions to it which would operate to bar the property interest of the other co-tenant, at least during the lifetime of the donor. *Dorsey* also created a conclusive presumption of a *causa mortis* gift by the donor in the absence of certain circumstances, as stated in its Syllabus Point 2:

> "Code, 1931, 31A-4-33 as amended, creates, in the absence of fraud, mistake or other equally serious fault, a conclusive presumption that the donor depositor of a joint and survivorship bank account intended a causa mortis gift of the proceeds remaining in the account after his death to the surviving joint tenant."

Here, we deal with the question of constructive fraud which, if found, vitiates the presumption of a *causa mortis* gift under *Dorsey*. We are asked to consider the fiduciary relationship which existed between Mr. Judy and Mr. Dunbar as a result of the power of attorney held by Mr. Dunbar. There is no dispute that the power of attor-

---

[1] The record suggests that Mr. Judy had existing checking and savings accounts at the bank, and upon presentation of the new signature cards the accounts were converted to joint accounts with survivorship.

ney was exercised. The record reveals that a notice from the bank of the maturity of the treasury bills and resulting availability of the $30,000 was sent to Mr. Dunbar and not Mr. Judy. The bank's notice also stated that unless contrary directions were given, the funds would be placed in Mr. Judy's savings account.

A power of attorney is a written instrument by which one person appoints another as his agent or attorney-in-fact and confers upon him authority to perform certain specified acts. 3 Am. Jur. 2d *Agency* § 23; 2A C.J.S. *Agency* § 150. A power of attorney creates an agency and this establishes the fiduciary relationship which exists between a principal and agent. In Syllabus Point 1 of *Sutherland v. Guthrie*, 86 W. Va. 208, 103 S.E. 298 (1920), we set the following standard of conduct for an agent:

> "In the conduct of his principal's business an agent is held to the utmost good faith, and will not be allowed to use his principal's property for his own advantage, or to derive secret profits or advantages to himself by reason of the relation of principal and agent existing between him and his principal."

Essentially the same rule was expressed in *Kersey v. Kersey*, 76 W. Va. 70, 85 S.E. 22 (1915), where one brother had obtained stock from another brother in a confidential relationship:

> "It is elementary that one partner must exercise scrupulous good faith toward the other in all matters within the scope of the partnership. That principle applies as well to other similar confidential relations." [76 W. Va. at 79, 85 S.E. at 25]

*Accord, Moore v. Turner*, 137 W. Va. 299, 71 S.E.2d 342 (1952); *Gaston v. Wolfe*, 132 W. Va. 791, 53 S.E.2d 632 (1949); *Laing v. Crichton*, 110 W. Va. 3, 156 S.E. 746 (1931).[2]

---

[2] A classic expression of the fiduciary rule is that of Cardozo in *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928):

"Many forms of conduct permissible in a workaday world for those acting at arms's length, are forbidden to those bound by

A corollary to the fiduciary principle is the rule that a presumption of fraud arises where the fiduciary is shown to have obtained any benefit from the fiduciary relationship, as stated in 37 Am. Jur. 2d *Fraud and Deceit* § 441:

> "Thus, if in a transaction between parties who stand in a relationship of trust and confidence, the party in whom the confidence is reposed obtains an apparent advantage over the other, he is presumed to have obtained that advantage fraudulently; and if he seeks to support the transaction, he must assume the burden of proof that he has taken no advantage of his influence or knowledge and that the arrangement is fair and conscientious. . . ."

*Accord*, 37 C.J.S. *Fraud* §§ 2 and 95.

We adopted a virtually identical rule in *Work v. Rogerson*, 152 W. Va. 169, 160 S.E.2d 159 (1968), where three individuals entered into a declaration of trust which provided for equal sharing in profits from the sale of lands purchased at delinquent tax sales:

> "There is no question but that the defendant Moore was in a fiduciary capacity when the land in question was sold, when the decrees of confirmation were entered, when the declarations of trust were executed and the final decree obtained and in such cases of fiduciary relationship where there may be indication of fraud, a presumption of fraud arises and the burden of going forward with the evidence rests upon the fiduciary to establish the honesty of the transaction. 37 C.J.S. Fraud, § 95; 8 M.J. Fraud and Deceit, § 56;

---

fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. . . . Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. . . ."

Atkinson v. Jones, [110 W.Va. 463, 158 S.E. 650 (1931)] supra; Nicholson v. Shockey, [192 Va. 270, 64 S.E.2d 813 (1951)] supra. See Campbell v. Campbell, 146 W.Va. 1002, 124 S.E.2d 345 [1962]." [152 W. Va. at 185, 160 S.E.2d at 169]

In Syllabus Point 1 of *Atkinson v. Jones*, 110 W. Va. 463, 158 S.E. 650 (1931), we said: "[I]n a case where a fiduciary relationship exists and an inference of fraud arises, the burden of proof is then on the alleged feasor to establish the honesty of the transaction."

*Nicholson v. Shockey*, 192 Va. 270, 64 S.E.2d 813 (1951), cited by this Court in *Work, supra*, involved facts similar to those of the present case. There, an attorney representing his mother in an eminent domain case obtained a settlement of $16,000. He placed one-half of this money in a joint savings account in their names with right of survivorship. Upon her death a few months later, his brothers and sisters brought an action against him. They claimed he obtained the money by virtue of a confidential relationship giving rise to a presumption of fraud. The court agreed, stating:

"But the presumption of fraud or undue influence which casts the burden of proving the *bona fides* of the transaction upon the appellee, Harry A. Shockey, is not dependent upon the existence of the relation of attorney and client between him and his mother. The rule is not limited to attorneys at law. It springs from any fiduciary relationship, and when such relationship is found to exist, any transaction to the benefit of the dominant party and to the detriment of the other is presumptively fraudulent. The same high standard of good faith and loyalty is required of an agent to his principal as of an attorney to his client. . . ." [192 Va. at 277-78, 64 S.E.2d at 817-18]

The *Nicholson* court went on to review the evidence and concluded that the attorney had not overcome the presumption of constructive fraud by clear and satisfying evidence:

"But here the burden was on the appellee [attorney] to overcome the presumption of constructive fraud by clear and satisfactory evidence. Such degree of proof means something more than a mere preponderance of the evidence. 32 C.J.S., Evidence, § 1023, p. 1059; 20 Am.Jur., Evidence, § 1253, pp. 1103-5." [192 Va. at 282, 64 S.E.2d at 820]

A majority of courts hold that in certain instances a presumption of constructive fraud may arise in connection with joint bank accounts with survivorship, if the parties to the joint account occupy a fiduciary or confidential relationship. This presumption requires the person who benefits from the creation of the account to bear the burden of proving that the funds were, in fact, a *bona fide* gift. *See, e.g., Nicholson v. Shockey, supra; In re Estate of Barcikowski*, 480 S.W.2d 877 (Mo. 1972); *In re Estate of Svab*, 11 Ohio St.2d 182, 228 N.E.2d 609 (1967); *In re Estate of Keeney*, 465 Pa. 45, 348 A.2d 108 (1975). We adopt this rule, as it is consistent with our fiduciary law.

The record before us fails to disclose any evidence offered by the defendant which refutes the existence of a confidential relationship. Nor does the defendant explain in any manner the necessity for placing the $30,000 in the joint savings account. The record is silent as to whether Mr. Judy was even aware of, much less sanctioned, this action. Clearly, the money belonged to Mr. Judy and as the sole survivor, the fiduciary, Mr. Dunbar, direcly benefited from his action in having the funds placed in the joint savings account. The same is true of the initial amounts in Mr. Judy's checking and savings accounts when Mr. Dunbar converted them to joint accounts.

The trial court therefore erred in granting judgment for Mr. Dunbar, and consequently its judgment is reversed and the case is remanded.

*Reversed and remanded.*