371 S.E.2d 371

**Quinto VERCELLOTTI, Jr., Executor of the Estate of Annetta Vercellotti**

v.

**Edith Vercellotti BOWEN, et al.**

**No. 17523.**

Supreme Court of Appeals of West Virginia.

July 22, 1988.

---

James G. Bordas, Jr., Bordas & Bordas, Wheeling, for Edith Vercellotti Bowen.

Melvin W. Kahle, Jr., Wheeling, for Quinto Vercellotti, Jr.

PER CURIAM:

Edith and George Bowen appeal from a final order of the Circuit Court of Ohio County which declared the estate of Annetta Vercellotti the owner of a savings account and three certificates of deposit jointly held in the names of Annetta Vercellotti and Edith Vercellotti Bowen. Quinto Vercellotti, Jr., as executor of the estate of Annetta Vercellotti, petitioned the circuit court to declare the four accounts, totaling $99,930.12, estate assets. He maintained that the accounts were created with the decedent's funds; that Edith Bowen and George Bowen, her husband, exercised fraud, duress, undue influence, and conversion upon the decedent resulting in Mrs. Bowen's name appearing on the accounts as survivor; and that a bona fide gift was not intended by the decedent. The defendants in the suit were the Bowens and the six other surviving children of Annetta Vercellotti.[1]

The jury verdict declared the executor of the estate to be the owner of the funds in the accounts. The trial court then ordered that all of the funds, with interest since April 8, 1985, be delivered to the executor and denied defendants' motion for judgment notwithstanding the verdict or a new trial. The Bowens contend that the verdict was contrary to law, relying on W.Va.Code,

1. Annetta Vercellotti's husband, Quinto Vercellotti, Sr., died in 1961.

31A–4–33 (1969),[2] and the weight of the evidence. They assert that there was no showing of fraud, mistake, or other equally serious failure or other fiduciary relationship between Annetta Vercellotti and Edith Vercellotti Bowen.[3] We do not agree, and we affirm the trial court.

Annetta Vercellotti died on April 8, 1985, at age ninety-four. In her will, she left all her property to her children in equal shares. During her lifetime, the decedent was the center of a large extended family of children, grandchildren, and great grandchildren. The decedent's adult children established their own households on adjoining property or within a close vicinity of the "homestead," except for Mrs. Bowen, who lived her entire life with her mother. In 1974 when Edith Vercellotti married George Bowen, he moved into the decedent's homestead.

The existence of a confidential fiduciary relationship between the Bowens and the decedent is the crux of the dispute over the decedent's funds. The Bowens contend that after their marriage they cared for the decedent, included her in their leisure activities, and contributed to the household expenses. Mr. Vercellotti, on the other hand, argued that the Bowens attempted to isolate the decedent from other family members while gaining control over her financial assets. Some family members testified that the decedent was healthy, alert, and active until her death. Others testified that in the few years before her death, the decedent was dependent upon the Bowens, had failing eyesight, and could only read headlines or advertisements in the newspapers due to her limited education and limited familiarity with the English language.

We briefly review the testimony about the decedent's funds. When the decedent's husband died in 1961, he left her savings in the bank and valuable real estate with rental property. In 1962, the decedent opened a savings account and included Mrs. Bowen as a joint tenant at the suggestion of a bank employee. Mrs. Bowen testified that neither she nor the decedent understood the legal rights of joint tenancy with survivorship when the account was opened. In February 1971, after a family discussion about new higher interest rates earned by certificates of deposit, the decedent purchased one. Again, Mrs. Bowen was a joint tenant in the account with the right of survivorship. The decedent never returned to the bank after this transaction.

After his marriage in 1974, Mr. Bowen did all the banking for the household. Mr. and Mrs. Bowen testified that there was an informal system whereby the household members put money in a kitchen drawer out of which household bills were paid[4] and deposits made in the savings account.

2. W.Va.Code, 31A–4–33 (1969), provides in pertinent part:

"When a deposit is made by any person in the name of such depositor and another or others and in form to be paid to any one of such depositors, or the survivor or survivors of them, such deposit, and any additions thereto, made by any of such persons, upon the making thereof, shall become the property of such persons as joint tenants; and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of them during the lifetime of them, or to the survivor or survivors after the death of any of them; and such payment and the receipt or the acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge for all payments made on account of such deposit, prior to the receipt by the banking institution of notice in writing, signed by any one of such joint tenants not to pay such deposit in accordance with the terms thereof."

3. The Bowens raised several evidentiary errors which we have reviewed and found meritless. The motion in limine pursuant to our Dead Man's Statute, W.Va.Code, 57–3–1 (1937), was not renewed at trial when the testimony was offered. Notwithstanding this omission, the trial court instructed witnesses to limit their testimony to relevant conduct or communication. The transcript also shows that the trial court, recognizing the high emotions evidenced by the family members who testified, instructed witnesses to be responsive to questions asked and sustained objections to immaterial and irrelevant statements. The decedent's notebook was admitted into evidence with a limiting instruction.

4. Money from the kitchen drawer was deposited in Mr. Bowen's checking account and he wrote a check when household bills were not paid in cash.

When sufficient funds had accumulated in the savings account, Mr. Bowen would purchase a certificate of deposit.

Mr. Bowen testified that he kept track of interest rates and attempted to invest the money in the most advantageous manner. Mrs. Bowen testified that whenever a new account was opened, Mr. Bowen brought home the signature card, she and the decedent signed it, and he returned the card to the bank.

The testimony about income in the household revealed that the decedent's annual income, at her death, totaled $20,904 from rents from five properties, social security benefits, and savings interest. After her marriage, Mrs. Bowen was a homemaker without earned income. Mr. Bowen was employed as a truck driver grossing $15,000 to $20,000 annually from which he paid certain travel expenses. He testified that when he married Edith, he had no assets and an obligation to support one child from a prior marriage. During the course of this marriage, he accumulated an IRA of approximately $10,000 and a savings account in his name which in 1983 earned interest in the amount of $1,167.88. In 1975, Mrs. Bowen closed an account jointly held with her mother in the amount of $8,000 to purchase and repair a tractor-trailer truck for Mr. Bowen.

The last transaction on the jointly held account occurred two hours prior to the decedent's death, when Mr. Bowen purchased with the decedent's funds a $14,000 certificate of deposit in the name of the decedent or Mrs. Bowen. On April 10, 1985, Mr. Bowen redeemed the $14,000 certificate of deposit, placed the proceeds in his personal checking account, and paid about $5,400 funeral and medical expenses for the decedent.

■ In *Dorsey v. Short*, 157 W.Va. 866, 205 S.E.2d 687 (1974), we examined the effect of W.Va.Code, 31A–4–33 (1969).[5] We concluded in Syllabus Point 2:

"Code, 1931, 31A–4–33, as amended, creates, in the absence of fraud, mistake or other equally serious fault, a conclu-

sive presumption that the donor depositor of a joint and survivorship bank account intended a causa mortis gift of the proceeds remaining in the account after his death to the surviving joint tenant."

■ In *Kanawha Valley Bank v. Friend*, 162 W.Va. 925, 253 S.E.2d 528 (1979), we considered the question of constructive fraud and joint bank accounts and concluded in the Syllabus:

"A presumption of constructive fraud may arise in connection with joint bank accounts with survivorship, if the parties to the joint account occupy a fiduciary or confidential relationship. This presumption requires the person who benefits from the creation of the account to bear the burden of proving that the funds were, in fact, a *bona fide* gift."

In *Kanawha Valley Bank*, the fiduciary relationship resulted from a power of attorney held by one joint tenant of a bank account for the other tenant. However, the holding was not limited only to legally created relationships. *Kanawha Valley Bank*, 162 W.Va. at 928–29, 253 S.E.2d at 530.

This Court has applied the presumption of constructive fraud to a close relationship where the facts prove that the parties are not dealing on an equal basis. In *Kersey v. Kersey*, 76 W.Va. 70, 85 S.E. 22 (1915), which involved two brothers, we found a confidential relationship where one obtained stock in the business while others relied on him as an implied partner. We found a confidential relationship in *Dillon v. Dillon*, 178 W.Va. 531, 362 S.E.2d 759 (1987), between a widow and her brother-in-law, on whom she relied because of his superior business knowledge. This appears to be a generally recognized principle. *See* 37 Am.Jur.2d, *Fraud and Deceit* §§ 441–42 (1968).

Other courts have addressed unequal relationships where one party is a dependent or aged person. *In Re Estate of Svab*, 8 Ohio App.2d 80, 220 N.E.2d 720 (1966), *aff'd*, 11 Ohio St.2d 182, 228 N.E.2d 609 (1967), involved facts remarkably similar to

**5.** For the text of W.Va.Code, 31A–4–33 (1969), *see* note 2, *supra*.

those in the present case. There a woman, because of advancing age and failing eyesight, depended on her daughter for assistance in her financial affairs. The mother did not personally appear at the bank for any transactions concerning three savings accounts held between these parties as joint tenants with survivorship. The daughter obtained signature cards from the bank and returned the cards to the bank. The only witness to the signing was the daughter who was the beneficiary. In the last year before the mother's death, the daughter managed her financial affairs, making bank deposits and issuing checks for household bills. The Ohio court found that under these circumstances, the mother and daughter were in a confidential relationship when the survivorship signature cards were signed. *See Texas Bank & Trust Co. v. A.E. Moore,* 595 S.W.2d 502 (Tex.1980); *Matter of the Estate of Heilman,* 37 Ill.App.3d 390, 345 N.E.2d 536 (1976).

■ In the present case, there was sufficient evidence that a confidential relationship existed between the decedent and the Bowens to support the court's giving a constructive fraud instruction to the jury. The decedent was of advanced age, had failing eyesight with cataracts, and had limited ability in the English language. She relied upon family members to correspond in English. She had been a homemaker throughout her life. Her main excursion in the last years of her life was a trip to the grocery store. Also, the Bowens exerted control over the decedent's assets by paying bills and doing all the banking. As in *Svab,* the decedent's only contact with the bank accounts was a signature card which explained joint tenancy with survivorship in print so small that her treating physician testified it would be difficult for her to read.

■ The presumption of constructive fraud requires the person who benefits from the creation of the account to bear the burden of proving that the funds were, in fact, a bona fide gift. Syllabus Point 2 of *Miami Coal Co., Inc. v. Hudson,* 175 W.Va. 153, 332 S.E.2d 114 (1985), controls the question of the sufficiency of the evidence:

" 'In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.' Syllabus Point 5, *Orr v. Crowder,* [173] W.Va. [335], 315 S.E.2d 593 (1983)."

*See also Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975).

■ Under this standard, we believe the jury could have concluded that a confidential relationship existed between the decedent and the Bowens and that the Bowens exerted influence and control over the decedent's accounts for their benefit. There was sufficient evidence for it to reject the Bowens' contention that the funds were a bona fide gift.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Ohio County.

Affirmed.