405 S.E.2d 465

**Carl A. SMALLRIDGE, Executor of the Estate of Gladys Smallridge; and Thomas Hillyard, Sr., Plaintiffs Below, Appellees,**

v.

**Rosalee SIPE, as Executrix of the Estate of Harry Hillyard; Rosalee Sipe, Individually; and John William Sipe, Defendants Below, Appellants.**

No. 19716.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 16, 1991.

Decided May 24, 1991.

Gerald E. Jones, West & Jones, Clarksburg, for appellants.

Thomas G. Freeman, Mark A. Mangano, Jackson & Kelly, Charleston, for appellees.

## PER CURIAM:

Rosalee Sipe and John William Sipe, the defendants below, appeal an order of the Circuit Court of Barbour County, dated February 22, 1990, granting summary judgment for Carl A. Smallridge, Executor of the Estate of Gladys Smallridge, and Thomas Hillyard, Sr. The Sipes contend that summary judgment was improper because there was sufficient evidence presented to raise a genuine issue of material fact. We agree; therefore, we reverse

and remand the case for further proceedings consistent with this opinion.

## I.

Harry Hillyard was the brother of Thomas Hillyard, Sr., and Gladys Smallridge,[1] and was Rosalee Sipe's uncle. On August 31, 1982, Mr. Hillyard executed a will in which he appointed Mrs. Sipe as executrix and bequeathed to her his residence and several personal items. He divided the residue of his estate equally among Mrs. Sipe, Thomas Hillyard, Sr., and Gladys Smallridge.

Mr. Hillyard had been a widower for several years and lived alone. From 1982 until his death in 1984, the Sipes assisted Mr. Hillyard with a variety of personal matters, including cooking, washing his clothes, cleaning his house, assisting him with his finances, and driving him to various locations.

On September 8, 1984, Mr. Hillyard became seriously ill, and the Sipes took him to the Memorial General Hospital in Elkins, where he was immediately admitted as a patient. On September 20, 1984, while the Sipes were visiting Mr. Hillyard at the hospital, he expressed a desire to leave the funds in his certificates of deposit (CDs) to Mrs. Sipe.[2] He memorialized his intention by writing a note, totally in his own handwriting. The note stated: "I, Harry Hillyard, will put Rose Sipe on all my CDs." This note was signed by Mr. Hillyard. Carl Lanham, Mr. Hillyard's hospital roommate, witnessed the signing of the note.[3] Mr. Lanham, along with three other people, also signed the note.

After Mr. Hillyard gave the note to Mrs. Sipe, she went to the Bank of Belington and had her name added to Mr. Hillyard's two CDs. She also attempted to have her name put on Mr. Hillyard's savings and

1. Gladys Smallridge has died since the institution of this action, and the executor of her estate has been appointed to represent her.

2. At the time of his death, Mr. Hillyard had two CDs at the Bank of Belington, one for $25,037.15 and another for $40,000. He also had

two CDs at the Davis Trust Company for $35,018.78 and $16,037.28, respectively.

3. In his deposition, Mr. Lanham testified that Mr. Hillyard was alert and coherent during his hospital stay.

checking accounts, but the bank refused this request.[4]

Later that same day, at Mr. Hillyard's request, Mrs. Sipe went to his attorney and had him prepare a power of attorney in favor of Mrs. Sipe. Mrs. Sipe and a notary public proceeded to the hospital and had Mr. Hillyard sign the power of attorney. She then returned to the Bank of Belington and added her name on both the savings and checking accounts. The next day, Mrs. Sipe went to the Davis Trust Company and had her name added on Mr. Hillyard's CDs there.

A week later on September 27, 1984, Mr. Hillyard died. When Mrs. Sipe, as executrix of Mr. Hillyard's will, refused to include the proceeds from the CDs in his estate, the plaintiffs filed suit. Subsequently, the trial court granted summary judgment for the plaintiffs and ordered Mrs. Sipe to pay the estate of Harry Hillyard $124,984.24, plus statutory interest from the date of his death. As earlier stated, the Sipes appeal.

### II.

■ In Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), we established a standard to be employed in determining whether summary judgment is proper:

> "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

See also *Massey v. Jim Crockett Promotions, Inc.*, 184 W.Va. 441, 400 S.E.2d 876 (1990); *Stemple v. Dobson*, 184 W.Va. 317, 400 S.E.2d 561 (1990); *Shell v. Metropolitan Life Ins. Co.*, 183 W.Va. 407, 396 S.E.2d 174 (1990). Summary judgment is not proper "unless the facts established show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party cannot prevail under any circumstances." *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. at 171, 133 S.E.2d at 777. (Citations omitted). With this standard in mind, we turn to the facts of this case.

### III.

In support of their contention that summary judgment was proper, the appellees cite *Kanawha Valley Bank v. Friend*, 162 W.Va. 925, 253 S.E.2d 528 (1979), as controlling. In *Kanawha Valley Bank*, Manassah Judy executed a power of attorney in favor of Theodore Dunbar, his brother-in-law and business associate, because he needed assistance in handling his business affairs. Shortly thereafter, Mr. Dunbar, using his power of attorney, arranged to have $30,000 in matured United States Treasury Bills owned by Mr. Judy placed in a joint account which he had earlier opened with Mr. Judy. Mr. Judy died shortly thereafter and Mr. Dunbar, as the survivor, claimed ownership of the account.

The Kanawha Valley Bank, as executor of the estate, filed a declaratory judgment action to determine whether Mr. Dunbar or the beneficiaries under Mr. Judy's will were entitled to the monies in the bank account. The trial court held that Mr. Dunbar owned the money in the accounts by virtue of the survivorship provisions of W.Va.Code, 31A-4-33 (1969).[5]

■ On appeal, we reversed, pointing out that Mr. Dunbar had used the power of attorney to effectuate the $30,000 deposit

---

4. At the time of Mr. Hillyard's death, he had $4,393.24 in his checking account and $4,497.79 in his savings account.

5. W.Va.Code, 31A-4-33, provides, in part:

   "When a deposit is made by any person in the name of such depositor and another or others and in form to be paid to any one of such depositors, or the survivor or survivors of them, such deposit, and any additions thereto, made by any of such persons, upon the making thereof, shall become the property of such persons as joint tenants; and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of them during the lifetime of them, or to the survivor or survivors after the death of any of them[.]"

into the joint account of which he was the beneficiary. We also observed that there was nothing in the record to show that Mr. Judy consented to this arrangement, nor was there any explanation offered for the necessity of these actions. We concluded in the Syllabus of *Kanawha Valley Bank:*

"A presumption of constructive fraud may arise in connection with joint bank accounts with survivorship, if the parties to the joint account occupy a fiduciary or confidential relationship. This presumption requires the person who benefits from the creation of the account to bear the burden of proving that the funds were, in fact, a *bona fide* gift."

■ Here, there is evidence that in advance of the transfer of the CDs to joint names Mr. Hillyard wanted this to be done. In *Kanawha Valley*, the fiduciary or confidential relationship existed prior to the time of the transfer of the funds. More importantly, there was no independent evidence that the owner of the funds approved the transfer.

The appellees argue that prior to the writing of the note, the Sipes were in a confidential relationship with Mr. Hillyard because of his age and because they took care of his affairs. This became an issue of fact which was not susceptible to summary judgment. Much the same answer applies to the appellee's argument that the note does not evidence a present intention to make a gift by Mr. Hillyard. *See Rodgers v. Rodgers*, 184 W.Va. 82, 399 S.E.2d 664 (1990).[6] It must be remembered that the CDs were not in Mr. Hillyard's physical possession. The language of the note, "I will place," is easily susceptible to the interpretation that this was a direction to the Bank which issued the CDs to place Mrs. Sipe's name on them.

■ With regard to the CDs, the central jury issue is whether the initial signed note of Mr. Hillyard was a product of his free will. The counter inquiry is whether the Sipes had such a confidential relationship that it could be said he was subject to their influence in making the note. If the first finding is made, there is no presumption of fraud, and the appellees would then be required to prove fraud under the standard set out in Syllabus Point 2 of *Lutz v. Orinick*, 184 W.Va. 531, 401 S.E.2d 464 (1990):

"A party seeking to prove fraud, mistake or other equally serious fault must do so by clear and convincing evidence and if such fault is not so proven, then the surviving joint tenant may rely on the conclusive presumption created by *W.Va.Code*, 31A–4–33, as amended, that the donor depositor of a joint and survivorship account intended a causa mortis gift of the proceeds remaining in the account after his death to the surviving joint tenant to establish such gift."

If on the other hand, the jury finds that the Sipes had a confidential relationship with Mr. Hillyard and that this influenced him to write the note, then a presumption of fraud exists under *Kanawha Valley*. The Sipes would then be required to rebut this presumption.

■ Finally, as to the checking and savings accounts, there is nothing in the note that covers these funds. The transfer was accomplished only after the power of attorney was obtained and pursuant to it, which under *Kanawha Valley* established a fiduciary relationship and the presumption of fraud. The Sipes would be required to rebut this presumption.[7]

The trial court also appeared to base the summary judgment in part on the fact that the Sipes were barred from testifying un-

---

6. The appellees argue that there was nothing to show that Mr. Hillyard wanted Mrs. Sipe to place the CDs in joint names with survivorship. However, W.Va.Code, 31A–4–33, creates survivorship in the accounts once they are placed in joint names. *Lett v. Twentieth Street Bank*, 138

W.Va. 759, 77 S.E.2d 813 (1953). *See Dorsey v. Short*, 157 W.Va. 866, 205 S.E.2d 687 (1974).

7. The power of attorney does not control the CD issue because of the primary importance of the note as evidencing Mr. Hillyard's intent.

der the Dead Man's Act, W.Va.Code, 57-3-1 (1937). However, the deposition of Mr. Lanham, who witnessed the signing of the note, indicated that Mr. Hillyard desired to give the CDs to Mrs. Sipe. His testimony was sufficient to foreclose summary judgment on this issue.

Accordingly, we reverse and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.