# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**George Kendall Sherry,**
**Defendant Below, Petitioner**

**vs)  No. 16-0854**  (Hampshire County 15-C-72)

**Bank of America, N.A. and**
**Selene Finance, LP,**
**Plaintiffs Below, Respondents**

**FILED**

**May 19, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner George Kendall Sherry, by counsel Jonathan G. Brill, appeals the Circuit Court of Hampshire County's August 10, 2016, memorandum opinion and order wherein the circuit court ordered that a deed of trust be reformed to include the real property serving as security under that deed of trust, rescinded a trustee sale and the conveyance of the subject property to Respondent Bank of America, N.A. ("Bank of America"), and reinstated indebtedness owed under the deed of trust owned by Respondent Selene Finance, LP ("Selene"). In that order, the circuit court also nullified a transfer on death deed. Respondents Bank of America and Selene, by counsel R. Terrance Rodgers, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On or about February 20, 1989, Mrs. Anne Elizabeth Besecker and Mr. John Albert Besecker (both now deceased) purchased real estate in Hampshire County, West Virginia, designated as Lots 19 and 21 in the Whitson's Point subdivision from Billy and Drema Whitson. Approximately four months later, Mr. and Mrs. Besecker purchased Lots 17 and 23 in that same subdivision from the Whitsons. Thereafter, Mr. and Mrs. Besecker constructed a home on Lot 19. Between 2001 and 2006, Mr. and Mrs. Besecker executed four deeds of trust in favor of various financial institutions whereby they pledged as collateral for mortgage loans all four lots they owned in the Whitson's Point subdivision. In December of 2008, Mr. and Mrs. Besecker obtained a mortgage from respondents' predecessor-in-interest, Real Estate Mortgage Network, Inc. On the same date, Mr. and Mrs. Besecker executed a deed of trust, which was recorded in the county clerk's office. According to the circuit court, Lots 17 and 23 were described in the property description to the deed of trust, but Lots 19 and 21 were not included in that property description. That transaction is the one currently at issue.

1

The appraisal for the mortgage loan from respondents to Mr. and Mrs. Besecker provided a fair market value of Lots 17, 19, 21, and 23, including Mr. and Mrs. Besecker's residence situated on Lot 19. As part of their loan application with respondents, the Beseckers submitted an occupancy affidavit in which they certified that at that time they were occupying the property being pledged to secure the loan. They also submitted a Uniform Residential Loan Application in which they stated that the present market value of their real property was $215,000 and that the property being pledged by them had one unit on it built in 1989. They completed additional documentation that clearly included their residence as part of the collateral for the mortgage loan.[1] Mr. Besecker passed away in May of 2011. In 2012, by an Assignment of Deed of Trust, the deed of trust securing the mortgage loan was assigned to Bank of America, and that deed of trust was recorded with the county clerk.

On March 24, 2014, petitioner became successor attorney-in-fact for Mrs. Besecker pursuant to a durable unlimited power of attorney, and the same was recorded with the county clerk. On April 3, 2014, as a result of a default on the mortgage loan, a trustee's sale was conducted pursuant to the deed of trust that secured the mortgage loan, and Bank of America was the highest bidder at that sale.[2] A Trustee's Report of Sale Under Deed of Trust related to that sale was recorded with the county clerk. A Trustee's Deed related to that sale and conveying the property sold to Bank of America was also recorded with the county clerk. As the circuit court stated in its order,

> [t]he undisputed facts show [that Bank of America] believed it was purchasing all of the property which the parties to the Deed of Trust intended would secure the Mortgage Loan, and in particular, that it was purchasing Lot 19 and Lot 21 of the Whitson's Point subdivision and the Beseckers' residence. The property which it bought, however, did not include Lot 19 or Lot 21 of the Whitson's Point subdivision or the Beseckers' residence. The undisputed facts show that [Bank of America] first learned of the mistake in the property description in or about May of 2014, after the trustee's sale. The undisputed facts show [that Bank of America] further learned of the mistake in the property description in connection with its institution of an unlawful detainer proceeding against Mrs. Besecker in the Magistrate Court of Hampshire County, West Virginia, in about July 2014, when [petitioner], responding to the initiation of said unlawful detainer proceeding, expressed the belief that [Bank of America] was mistaken in its belief as to the real property it had purchased at the trustee's sale.

On November 17, 2014, Bank of America assigned the mortgage loan to Selene. On February 11, 2015, petitioner signed a transfer on death deed, the intent of which was to transfer title to Lots 19 and 21 to himself upon Mrs. Besecker's death; that transfer was recorded with the county clerk. This was done despite petitioner's knowledge that Bank of America and/or Selene

---

[1] By December of 2008, the taxing authorities of Hampshire County treated all four lots as one parcel for taxation purposes.

[2] Bank of America paid $156,000 at the trustee sale.

2

claimed a security interest in those lots at the time he signed the transfer. Mrs. Besecker died in June of 2015, and petitioner was appointed administrator of the estate.

On July 14, 2015, Bank of America filed an action in the circuit court seeking to set aside the transfer on death deed, set aside the foreclosure sale, and reform the underlying deed of trust to include lots 19 and 21 as collateral for the loan made in 2008. Petitioner filed a motion to dismiss for lack of standing regarding Bank of America's request to void the transfer on death deed. That motion was denied by order entered on November 12, 2015. Bank of America sought leave to amend the complaint, and its amended complaint was filed on April 13, 2016. Respondents filed a motion for judgment on the pleadings or, in the alternative, for summary judgment. According to the circuit court, petitioner's only defenses were laches and lack of standing as to respondents with regard to a single count in the first amended complaint. In its "Memorandum Opinion and Order" filed on August 10, 2016, the circuit court ruled on respondents' motion for judgment on the pleadings or, in the alternative, for summary judgment, ordering that the 2008 deed of trust be reformed to include the real property serving as security under that deed of trust, specifically Lots 19 and 21 in the Whitson's Point subdivision. In its order, the circuit court also rescinded the trustee sale and voided both the conveyance of the subject property to Bank of America and the trustee's report of sale deed of trust. However, it reinstated the indebtedness owed under the deed of trust owned by Selene. It also nullified the transfer on death deed.

In its order, the circuit court also found that the undisputed facts show that Bank of America instituted suit approximately fourteen months after becoming aware of the error in the description of the real property securing the loan. It further held that there was no prejudice to petitioner due to that delay because petitioner knew of Bank of America's security interest claim with regard to Lots 19 and 21 when he purportedly conveyed those lots to himself. Petitioner appeals from that order.

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). On appeal, petitioner asserts three assignments of error. First, he contends that the circuit court erred when it permitted respondents to reform the deed of trust at issue and set aside the foreclosure sale, due in large part to the timeliness of those actions. He contends that he is at a significant disadvantage because respondents unreasonably delayed pursuing the action. Petitioner states that after the April of 2014 foreclosure sale, Bank of America sought to evict Mrs. Besecker and her family from the home situated on Lot 19. At that point, petitioner provided written correspondence to Bank of America notifying it that it had no interest in Lot 19. However, Bank of America took no action for approximately twelve months after petitioner sent that letter. Petitioner asserts that Bank of America's assignment of the loan to Selene further illuminates Bank of America's "lackadaisical course of action . . . ." He further claims that the "unreasonable delay" caused him to be at a significant disadvantage because the title to Lots 19 and 21 changed in the interim, Mrs. Besecker passed away, and he lost Mrs. Besecker's testimonial evidence.

This Court has long held that

"[e]quity has jurisdiction to reform and correct a deed executed through a mutual

3

mistake of fact to conform to the actual agreement of the parties to the deed when such mistake results from the mistake of the scrivener in the preparation of the deed." Syllabus point 1, *Edmiston v. Wilson,* 146 W.Va. 511, 120 S.E.2d 491 (1961).

Syllabus, *Reed v. Toothman*, 176 W. Va. 241, 342 S.E.2d 207 (1986). In addition, this Court has held that

"[t]he jurisdiction of equity to reform written instruments, where there is a mutual mistake, or mistake on one side and fraud or inequitable conduct on the other, if the evidence be sufficiently cogent to thoroughly satisfy the mind of the court, is fully established and undoubted." Syllabus Point 2, *Nutter v. Brown,* 51 W.Va. 598, 42 S.E. 661 (1902).

Syl. Pt. 3, *Terra Firma Co. v. Morgan*, 223 W. Va. 329, 674 S.E.2d 190 (2008). It is undisputed that the overwhelming documentary evidence shows the following: (a) all four lots were pledged for four previous mortgage loans – one in 2001, one in 2004, one in 2005, and one in 2006; (b) the mortgage loan at issue paid off a prior indebtedness on all four lots; (c) the mortgage loan application signed and submitted by Mrs. Besecker stated the real property which was to serve as collateral was her primary residence and had a present market value of $215,000; (d) the appraisal conducted on the property serving as collateral was on all four lots and included the residence; (e) Mrs. Besecker signed an acknowledgement of that appraised value of the collateral; (f) title work requested for the mortgage loan examined the title to all four lots; (g) Mrs. Besecker certified that she and her husband were living in the real property that would serve as collateral; (h) Mrs. Besecker signed documentation swearing that she and her husband resided in the premises on which title coverage was to be issued, having owned the residence since 1989; (i) certain HUD documentation for the mortgage loan showed the real property had existing construction on it consisting of two bedrooms and two bathrooms, which accurately describes the Besecker residence; (j) Mrs. Besecker obtained homeowner's insurance with $250,000 in coverage and named the lender as an additional insured; and (k) documentation regarding a flood hazard determination noted that the existing structure was not in the floodplain. Petitioner does not present any argument or testimony regarding how Mrs. Besecker's testimony would negate such evidence.

It is also undisputed that petitioner knew that respondents believed they had a legal interest in all four lots when petitioner executed the transfer on death deed. Therefore, the transfer in title was brought about by petitioner's actions when he knew or should have known that such title may not be valid. Bank of America also did not sit on its rights for years with knowledge of the mistake. For these reasons, we find that the circuit court did not err in granting summary judgment on timeliness grounds.

Petitioner's second assignment of error is that the circuit court erred by concluding that respondents had standing to set aside the transfer on death deed. Petitioner points to the fact that Mrs. Besecker executed an unlimited power of attorney on July 12, 2013, naming John Richard Germain as her attorney-in-fact and naming petitioner as her successor attorney-in-fact. On March 24, 2014, Mr. Germain resigned as attorney-in-fact for Mrs. Besecker, effectively

appointing petitioner as primary attorney-in-fact for her. Relying on his role as attorney-in-fact for Mrs. Besecker, petitioner executed a transfer on death deed dated February 11, 2015, wherein Mrs. Besecker conveyed Lots 19 and 21. Petitioner argues that respondents did not suffer an injury-in-fact as a result of such transfer because when the deed was executed the title to Lots 19 and 21 "had been held free and clear of all liens and encumbrances."

In examining standing, this Court previously stated as follows:

> Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an "injury-in-fact" – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

Syl. Pt. 5, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002). Pursuant to the Uniform Real Property Transfer on Death Act, a "transferor" is an individual who makes a transfer on death deed and a "beneficiary" is a person who receives property under a transfer on death deed. W.Va. Code § 36-12-2(1) and (8). In this case, because petitioner held Mrs. Besecker's power of attorney, he acted as both the transferor and beneficiary. Due to petitioner's dual role in the transfer on death deed, we must also consider the Uniform Power of Attorney Act, which provides, in part, that

> (a) [u]nless the power of attorney otherwise provides, language in a power of attorney granting general authority with respect to real property authorizes the agent to: . . . (2) Sell, exchange, convey with or without covenants, representations, or warranties, quitclaim, release, surrender, retain title for security, encumber, partition, consent to partitioning, subject to an easement or covenant, subdivide, apply for zoning or other governmental permits, plat or consent to platting; develop, grant an option concerning, lease, sublease, contribute to an entity in exchange for an interest in that entity or otherwise grant or dispose of an interest in real property or a right incident to real property; . . . .

As set forth above, a scrivener's error was the cause for the erroneous deed of trust, which was ultimately voided by the circuit court. Petitioner was apparently aware of the error and seized on what he perceived to be an opportunity. His self-dealing is the basis for his contention that there can be no injury-in-fact because Lots 19 and 21 were "free and clear of all liens and encumbrances." This fallacy underscores the actual injury suffered by respondents as a result of petitioner's attempt to execute a transfer on death deed acting as both the transferor and beneficiary of property he knew respondents claimed title to, as evidenced by Bank of America's filing of an action to evict Mrs. Besecker and her family from the residence located on Lot 19. Because respondents had an injury-in-fact, there was a causal connection between that injury and the conduct forming the basis of the lawsuit, and the injury will be redressed through a favorable decision of the court, we find that they had standing to seek to set aside the transfer on death deed.

Petitioner's final assignment of error is his claim that if respondents maintain standing, the circuit court erred by concluding that an agent, under a durable power of attorney, may not execute a transfer on death deed for the principal. He contends that because West Virginia Code § 39B-2-104 specifically permits an attorney-in-fact to convey an interest in real property or a right incidental to real property, the circuit court erred in finding that the transfer on death deed was void. However, he "acknowledge[d] that his interest in the real estate is subject to any and all liens and encumbrances asserted against the real estate at the time of Mrs. Besecker's death."

Portions of the relevant Uniform Real Property and Transfer on Death Act and the Uniform Power of Attorney Act are set forth hereinabove. In considering the power of attorney relationship, we previously held that "[a] power of attorney creates an agency and this establishes the fiduciary relationship which exists between a principal and agent." *Kanawha Valley Bank v. Friend*, 162 W. Va. 925, 928, 253 S.E.2d 528, 530 (1979). In *Kanawha Valley Bank*, we also set forth the following:

> A corollary to the fiduciary principle is the rule that a presumption of fraud arises where the fiduciary is shown to have obtained any benefit from the fiduciary relationship, as stated in 37 Am.Jur.2d Fraud and Deceit § 441:
>
> > "Thus, if in a transaction between parties who stand in a relationship of trust and confidence, the party in whom the confidence is reposed obtains an apparent advantage over the other, he is presumed to have obtained that advantage fraudulently; and if he seeks to support the transaction, he must assume the burden of proof that he has taken no advantage of his influence or knowledge and that the arrangement is fair and conscientious. . . ."
>
> Accord, 37 C.J.S. Fraud §§ 2 and 95.

*Kanawha Valley Bank*, 162 W. Va. at 929, 253 S.E.2d at 530. In that case, this Court also looked to Syllabus Point 1 of *Atkinson v. Jones*, 110 W. Va. 463, 158 S.E. 650 (1931), wherein we held that "[i]n a case where a fiduciary relationship exists and an inference of fraud arises, the burden of proof is then on the alleged feasor to establish the honesty of the transaction." *Kanawha Valley Bank*, 162 W.Va. at 930, 253 S.E.2d at 531.

In the instant matter, petitioner clearly benefitted from the transfer on death deed, and he has not pointed to any evidence that tends to show the honesty of the execution of such deed. Therefore, we find that the circuit court did not err in granting respondents' motion for summary judgment on this issue.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 19, 2017

6

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker