**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Juanita Sanders,**
**Plaintiff Below, Petitioner**

**FILED**

**November 21, 2018**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 18-0017** (Monroe County CC-32-2015-C-29)

**William Brown,**
**Defendant Below, Respondent**

### MEMORANDUM DECISION

Petitioner Juanita Sanders, by counsel Jeffry A. Pritt, appeals the Circuit Court of Monroe County's December 8, 2017, order ruling in respondent's favor following a bench trial concerning a real property conveyance. Respondent William Brown, by counsel Henry L. Harvey, filed a response. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in failing to grant her equitable relief from her real property conveyance to respondent and in determining that her manufactured home was transferred with the real property.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 23, 2011, petitioner conveyed, by general warranty deed, a tract of land to her son, respondent, reserving a life estate to herself. Petitioner also conveyed the property on behalf of her husband, for whom she held power of attorney due to his declining health. The conveyance was without consideration, as a gift from a parent to a child. Following the conveyance, respondent assumed responsibility for the property taxes and insurance on the property.

Prior to the conveyance of the subject property, petitioner purchased a manufactured home (the "home") for the property. Both petitioner and her husband lived in it, but it was titled exclusively in her name. Also prior to the conveyance, the home was placed on a cinderblock foundation, decks were built around it, and the tongue, used for transporting the home, was removed. Petitioner did not cancel the certificate of title following the home's placement on the land or transfer title to respondent.

Approximately three years after the conveyance, on October 22, 2014, petitioner's counsel informed respondent by letter that, "[i]t is our understanding from [petitioner] that you

1

had an agreement with her that you would return the property to her at a later date." Accordingly, respondent was asked to execute a deed enclosed with the letter conveying the subject property back to petitioner. Respondent refused to return the property, and petitioner filed suit asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, constructive trust, promissory estoppel, and fraud, and she sought specific performance of their alleged agreement.

The circuit court held a bench trial on October 13, 2016. Recognizing that no written agreement existed to support her claims, petitioner admitted at the outset of trial that her only remedy was in equity: "In particular, the imposition of a constructive trust is probably the primary one." Petitioner testified that she conveyed the subject property to respondent prior to her husband's death because she believed her husband's children from a prior marriage would either attempt to assert ownership of the property following his death or attempt unduly to encourage a transfer prior to his death. Petitioner testified that respondent was aware of her motives and they agreed that, following the settlement of her husband's estate, respondent would convey the property back to her. Petitioner further argued that she has three other children and did not intend to favor respondent over the others by conveying the property solely to him.

Respondent countered that no such agreement existed, and that petitioner would have had no need to reserve a life estate if there had been an agreement such as that described by her. In fact, respondent noted that the deed originally conveying the property to petitioner and her husband included a right of survivorship, thereby obviating any need to transfer the property to respondent for protection.[1] Respondent further highlighted that petitioner was represented by counsel at the time of the conveyance to him. Finally, respondent argued that the home was also conveyed as the deed specified that all improvements go with the property, and, in any event, fixtures attached to real property become part of the real estate.

The parties also testified regarding their relationship. Petitioner stated that she and respondent helped one another out over the years, but that he helped her "[n]o more than [she] helped him." Petitioner acknowledged that she was not coerced into conveying the property to respondent. Respondent testified that, of petitioner's children, he was the one to assist her, and that he often had to coax his siblings to visit petitioner. Respondent also acknowledged that, throughout the years, both he and petitioner helped one another as needed.

On December 8, 2017, the circuit court entered an order in respondent's favor. With respect to petitioner's constructive trust claim, the court recounted this Court's holding in *Kersey v. Kersey*:

> [W]here one obtains the legal title to property through the influence of a relation
> of confidence and trust, under such circumstances that he ought not in equity and

---

[1]At trial, petitioner was asked "whether or not you [and your husband] took the property with right of survivorship?" Petitioner responded that she did and explained that that meant "if something happened to [her husband], the land belongs to [her]."

good conscience to hold and enjoy the same as against the other party to the relation, equity will impress the property with a trust in favor of the latter.

76 W.Va. 70, 85 S.E. 22, 25-26 (1915) (citation omitted). But the court found that "[t]he only evidence presented as to the circumstances of [the parties'] relationship was that [they] had a fairly good relationship at the time the property was transferred."

The court further found both parties to be equally credible concerning whether an oral agreement was formed addressing the property's return. As a result, petitioner, the moving party who carried the burden of proof, failed to establish the existence of any such agreement. The court also noted other factors tending to militate against the existence of a constructive trust. Namely, petitioner suggested the property conveyance and consulted with an attorney to prepare the deed. Respondent did not encourage petitioner to convey the property, nor was there evidence that he obtained title to the property by gaining his mother's trust or otherwise influencing their relationship. Also, petitioner reserved a life estate, which would have been unnecessary if she believed the property was held in trust. She also allowed respondent to pay taxes and insurance.

Finally, the court concluded that, because a cinder block foundation had been built beneath the home, decks had been constructed around it, and the tongue had been removed prior to the conveyance, "[t]here can be no question that the doublewide mobile home became affixed to and was a part of the subject property at the time of conveyance." It is from this order that petitioner appeals.

We apply a two-pronged deferential standard of review to the circuit court's findings and conclusions following a bench trial. Syl. Pt. 1, in part, *Pub. Citizen, Inc. v. First Nat'l Bank*, 198 W.Va. 329, 480 S.E.2d 538 (1996). "The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review." *Id.* at 331, 480 S.E.2d at 540, Syl. Pt. 1, in part.

Petitioner raises two assignments of error on appeal. First, petitioner argues that the circuit court erred in failing to grant her equitable relief from the property transfer. Petitioner contends that the relationship she shared with her son was a close and confidential relationship, which, under equitable principles, should have vested respondent with the burden of proving that the property was a gift.

In support of her argument that the burden of proof should have rested with respondent, petitioner points to cases that offer support by analogy. First, in *Kanawha Valley Bank v. Friend*, we held that

> [a] presumption of constructive fraud may arise in connection with joint bank accounts with survivorship, if the parties to the joint account occupy a fiduciary or confidential relationship. *This presumption requires the person who benefits from the creation of the account to bear the burden of proving that the funds were, in fact, a bona fide gift.*

3

162 W.Va. 925, 931, 253 S.E.2d 528, 531 (1979) (emphasis added).[2] Likewise, petitioner argues, in *Marshall v. Marshall*, 166 W.Va. 304, 273 S.E.2d 360 (1980), we held that "[o]ne who receives property from another with whom he has a confidential relationship has the burden of showing that the transfer was fair and made with utmost good faith." *Id.* at 304, 273 S.E.2d at 361, Syl. Pt. 1.

We find that *Friend* and *Marshall* are inapplicable here. In *Friend*, a fiduciary relationship existed between the parties due to one holding a power of attorney to act for the other. 162 W.Va. at 926-27, 253 S.E.2d at 529-30. In *Marshall*, the parties were a husband and wife who had separated. 166 W.Va. at 305, 273 S.E.2d at 361. After experiencing marital problems, the parties sought the help of a psychiatrist. *Id.* The psychiatrist advised the wife not to make major decisions, prescribed her medication, and, at one point, recommended she be hospitalized. *Id.* at 305-06, 273 S.E.2d at 362. The parties attempted to reconcile, but the husband conditioned reconciliation on the wife's conveyance of all of her interest in her real property and stocks to him. *Id.* at 306, 273 S.E.2d at 362. The wife complied with her husband's request, but he nonetheless filed for divorce following the conveyance. *Id.* Under these circumstances, we found that "the husband did not meet the burden required by our fiduciary standard to show that he exercised the utmost good faith in inducing his wife's transfer of her property to him." *Id.* at 309, 273 S.E.2d at 363.

*Kersey* also presented a distinguishing set of facts. In that case, the parties were brothers who operated a laundry business. 76 W.Va. 70, 85 S.E. at 22. One brother, W.W. Kersey, was more involved in the day-to-day operations of the company while the other, J.L. Kersey, who was employed in a different field, provided financial support, and served in more of an advisory role. *Id.*, 85 S.E. at 23. The business suffered financial lows, and it was eventually sold, but repurchased on the brothers' behalf. *Id.* The title was taken in the name of an officer of the bank as security for the purchase money, but the officer was to transfer the title to J.L. Kersey upon satisfaction of the loan. *Id.* Eventually, questions arose as to each brother's respective interest, and their relationship deteriorated, leaving each claiming sole ownership. *Id.*, 85 S.E. at 24. This Court determined that

> the circumstances which led up to the purchase are of themselves sufficient to prove that [J.L. Kersey] could have had no other intention when he bought in the property and took title in his own name, than the carrying out of a plan impliedly

---

[2]Generally, the statute authorizing the creation of joint bank accounts with right of survivorship creates "in the absence of fraud, mistake or other equally serious fault, a conclusive presumption that the donor depositor of a joint and survivorship bank account intended a causa mortis gift of the proceeds remaining in the account after his death to the surviving joint tenant." Syl. Pt. 2, *Dorsey v. Short*, 157 W.Va. 866, 205 S.E.2d 687 (1974). As set forth in *Kanawha Valley Bank v. Friend*, 162 W.Va. 925, 253 S.E.2d 528 (1979), this presumption may be vitiated by a finding of constructive fraud.

agreed upon by him and his brother whereby they might mutually save themselves from the loss of their interests in the old company.

*Id.*, 85 S.E. at 24-25. In reaching this conclusion, we noted that each had a stake in the business prior to the sale, and "[f]or a long time they had worked together to the end that their investments might be saved." *Id.*, 85 S.E. at 25. Thus, "[e]ach had the right to believe that the other was still acting to the same end." *Id.* To hold otherwise and "allow [J.L. Kersey] to deny [W.W. Kersey] any interest in the property would be to sanction a fraud on the part of the former. It would convert a confidential relation into an implement of fraud." *Id.*

Although petitioner attempts to attribute the holding in *Kersey* "primarily . . . to the family relationship between those parties[,]" she ignores important distinctions not related to kinship. In *Kersey*, the brothers had been working together toward making the business successful. Indeed, their joint efforts were characterized as a partnership. *Id.*, 85 S.E. at 25 ("In the old affairs they had acted as partners. . . . In the purchase and continuation of the business they were still so acting."); *see also Vercelloti v. Bowen*, 179 W.Va. 650, 653, 371 S.E.2d 371, 375 (1988) (describing the *Kersey* relationship as one involving reliance on "an implied partner"). Here, the circuit court found no evidence that would support a finding that petitioner and respondent were partners, as found in *Kersey*; that a fiduciary relationship existed between them, as was the case in *Friend*; or that respondent in any way took advantage of petitioner in the way presented in *Marshall*. To the contrary, the court characterized the parties' relationship at the time of the conveyance as "good," and each testified that they were equally helpful to the other. Petitioner offers no law to support her contention that a familial relationship alone is sufficient to establish a confidential relationship, which, in turn, would warrant burden shifting. In fact, in *Nugen v. Simmons*, 200 W.Va. 253, 489 S.E.2d 7 (1997), we noted that facts establishing "a friendly or familial relationship" alone are insufficient to justify a finding that a fiduciary or confidential relationship existed for purposes invoking constructive fraud. *Id.* at 257-58, 489 S.E.2d at 11-12. Accordingly, we find no error in the circuit court's conclusion that petitioner bore the burden of proving her claims.

In petitioner's second assignment of error, she argues that even if the land conveyance is upheld, the circuit court erred in determining that the home was transferred with the land. Petitioner argues that West Virginia Code § 17A-3-12b, governing the cancelation of certificates of title for manufactured homes, should have been utilized by the circuit court to find that petitioner retained ownership of the manufactured home since she never canceled the certificate of title for her manufactured home.[3] Petitioner also argues under established law regarding

---

[3]At the time of the conveyance, West Virginia Code § 17A-3-12b (2004) provided pertinently that

> [t]he commissioner may cancel a certificate of title for a mobile or manufactured home affixed to the real property of the owner of the mobile or manufactured home. The person requesting the cancellation shall submit to the commissioner an application for cancellation together with the certificate of title. . . . The commissioner shall return one copy of the cancellation certificate to the owner

(continued . . . )

5

fixtures that the home remained her separate personal property. Petitioner states that although she "may previously have had an intent for her residence to be permanently affixed to the land, it appears that intent changed when she deliberately withheld the title to the home from her son at the time her land title was severed." Petitioner argues that her intent is controlling, and given her reservation of the life estate and retention of the title to the manufactured home, the court erred in concluding that she intended the home to transfer with the realty.

We find no error in the circuit court's refusal to find that West Virginia Code § 17A-3-12b (2004) is dispositive or in its application of fixture law in addressing the transfer of the manufactured home. Our long-standing law relative to fixtures provides that

> personal property used in connection with real estate is fixtures and part of the realty, when the following conditions concur: First, [i]t must be attached to the real estate, and by this we do not mean that it has to become so attached as to do serious damage to the realty, or to the property itself in order to remove it, but that it must be so attached as that the two, the real estate and the fixtures, work together to one end; second, it must be reasonably necessary and adapted to the purposes for which the real estate is being used; and, third, it must be the intention of the party placing such property upon the real estate to make it a part thereof. If the first two of these elements concur – that is, its attachment to the real estate and it[s] adaptability to the purposes for which the real estate is being used – it will be presumed that the party attaching it intended that it should be a part of the real estate, unles[s] a contrary intention appears from the conduct of the parties in relation to it.

*Snuffer v. Spangler*, 79 W.Va. 628, 92 S.E. 106, 110 (1917). Petitioner concedes that she "has no reasonable argument regarding the first two requirements as her home was attached to the real estate, and was certainly adapted to the purpose for which it was used." Given the existence of these first two elements, a presumption that petitioner intended it to be part of the real estate arose. *Id.* The circuit court did not clearly err in finding that no contrary intention appeared from the parties' conduct given that decks were constructed around the manufactured home, it was placed on a foundation, the tongue was removed, and respondent assumed tax and insurance obligations on the home.

> For the foregoing reasons, we affirm the circuit court's order finding in petitioner's favor.

---

> and shall send a copy of the cancellation certificate to the clerk of the county commission to be recorded and indexed in the deed book with the owner's name being indexed in the grantor index. . . . Upon recordation in the county clerk's office the mobile or manufactured home shall be treated for all purposes as an appurtenance to the real estate to which it is affixed and be transferred only as real estate and the ownership interest in the mobile or manufactured home, together with all liens and encumbrances on the home, shall be transferred to and shall encumber the real property to which the mobile or manufactured home has become affixed.

6

Affirmed.

**ISSUED**:  November 21, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment